LOCAL 369, UTILITY WORKERS UN-
ION OF AMERICA, AFL–CIO and Util-
ity Workers Union of America AFL–
CIO, Plaintiffs, Appellees,

v.

BOSTON EDISON COMPANY,
Defendant, Appellant.

No. 84–1522.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1984.

Decided Dec. 26, 1984.

Glenn E. Dawson, Boston, Mass., with
whom Keith H. McCown and Morgan,
Brown & Joy, Boston, Mass., were on brief
for defendant, appellant.

Joanne F. Goldstein, Framingham, Mass.,
for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, COF-
FIN, Circuit Judge, and WYZANSKI,* Sen-
ior District Judge.

COFFIN, Circuit Judge.

The defendant-appellant Boston Edison
Company (Company) appeals from an order
of the district court, 588 F.Supp. 800 (1984),
remanding to arbitration a dispute arising
from the collective bargaining agreement
between the Company and plaintiffs-appel-
lees, Local 369, Utility Workers Union of

* Of the District of Massachusetts, sitting by desig-    nation.

America, AFL–CIO and Utility Workers Union of America, AFL–CIO (Union). Following the district court, we conclude that even under the most deferential review of the arbitral decision, the award failed to "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) (*Enterprise Wheel*). Accordingly, we affirm the judgment below.

The collective bargaining agreement between the parties incorporates the Industrial Accident Disability Benefits Plan (Plan), which provides supplemental payments to employees who are receiving Workers' Compensation due to work-related disability. According to the terms of the Plan, "[t]he administration of the Plan" is under the direction of the Company's medical director and the vice president of employee relations (Administrators) "whose decisions with respect to all questions arising thereunder, including questions respecting the duration of total and partial incapacity for work, shall be final." Paragraph eight (¶ 8) of the Plan. Under paragraph four (¶ 4) of the Plan, an employee's entitlement to benefits ends when, among other reasons, an employee "is retired or when his employment is otherwise terminated." The present dispute arose as a result of the Administrators' decision to discontinue Plan benefits for Mr. Clegg, an employee on total disability who was placed on layoff status due to a reduction in the workforce. The Administrators concluded that an employee on layoff status has been "terminated" for purposes of the Plan and is thus ineligible to receive benefits under ¶ 4 of the Plan.[1]

The Union filed a grievance and sought arbitration concerning the discontinuance of Mr. Clegg's supplemental disability benefits for the period of the layoff. Boston Edison contended that the grievance was not arbitrable because the authority of the Plan Administrators is "final" under ¶ 8 of the Plan. The parties agreed to submit to the arbitrator only the question of jurisdiction, whether the issue raised presents an arbitrable difference between them under the collective bargaining agreement (Agreement).[2] Both sides claim to have reserved their right to seek judicial review of the arbitrator's award.

Acknowledging that the scope of the contract's arbitration clause was "admittedly broad" and that (unlike certain other matters) the Plan was nowhere expressly excluded in the contract from the grievance and arbitration process, the Board of Arbitration chaired by Arbitrator John Conlon (Conlon Award) held that the underlying grievance was not arbitrable because the Plan conferred on the Administrators "final" (non-reviewable) authority to decide "all questions" arising under the Plan. The Union sought judicial review of the Conlon Award under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) and argued below, as it has done here, that it is entitled to an independent determination of arbitrability claiming that the question of arbitrability of a particular grievance is one appropriately addressed, in the first instance, to the court. *See Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic Workers*, 600 F.2d 322, 324–25 (1st Cir.1979).

The district court correctly rejected this claim noting that:

"[c]ontrary to the union's assertions, the only precedents for independent judicial determination of arbitrability involved

---

1. Mr. Clegg was placed on layoff status from October 14, 1978 through April 28, 1979, at which time he was recalled by the Company to full employment status. Mr. Clegg's Workers' Compensation benefits continued for the entire period of his layoff.

2. The collective bargaining agreement between the parties contains a broad grievance provision, stating as follows:

"Any dispute arising between the parties during the term of this Agreement concerning the true interpretation and meaning of this Agreement or respecting rates of pay, wages, hours or employment, or other conditions of employment which have not been settled by this agreement shall be treated as a grievance . . . ."

cases in which the parties had not expressly committed arbitrability to the arbitrator for determination. For this reason ... *Mobil Oil* ... [does not address] the issue that is presented here. In *Mobil Oil*, the parties submitted to arbitration a grievance concerning the employer's subcontracting practices. The parties disagreed whether the dispute was arbitrable, but did not submit the arbitrability issue to the arbitrator. The First Circuit held that, in these circumstances, the district court, in reviewing the arbitrator's award, must make its own independent determination of the threshold issue of arbitrability. *Id.* at 325. The court did not address the role of the district court in reviewing an arbitrator's determination of arbitrability where the parties had agreed, by contract or post-dispute stipulation, to submit the issue of arbitrability to arbitration."

The Union here specifically agreed to submit the issue of arbitrability to arbitration. Accordingly, the district court concluded that the "deferential standard of judicial review that applies to an arbitrator's award in a dispute arising out of a collective bargaining agreement" is likewise applicable here, notwithstanding the parties' decision to submit a legal question, ordinarily within the court's jurisdiction, to the arbitrator for decision. *George Day Construction v. United Brotherhood of Carpenters,* 722 F.2d 1471, 1477 (9th Cir.1984); *see also United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960) (*Warrior & Gulf*).

■ Decisions on questions expressly committed to the arbitrator for determination are reviewable only to the extent necessary to determine if the arbitral award "draws its essence from the collective bargaining agreement." *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361. Applying this limited standard, the district court found that it could not enforce the Conlon Award on the arbitrability question because the award manifests an "infidelity to the agreement between the parties."

■ The argument was made by the Company that despite the protestations of the trial court, it did not review the arbitrator's determination with the appropriate deference. Had the court applied only a limited review, the Company argues, it could not have overturned the arbitrator's finding of nonarbitrability. This claim is superficially supported by the length of the court's discussion and the detailed bases for its conclusions. Upon closer scrutiny, however, we believe that the district court, in its limited review, noted basic legal flaws in the Conlon Award which made deference to the arbitrator's award impossible under any standard.

The district court offered a number of reasons why the arbitrator was wrong. A principal reason, which we find persuasive, is the court's conclusion that ¶ 8 of the Plan cannot logically be read as the arbitrator would have it to vest the Administrators with the authority not only to administer the plan and make fact-specific decisions, but to determine with utter finality all legal standards or rules applicable to the whole class of Plan beneficiaries. The present dispute is not, after all, a dispute of fact bearing upon an employee's claim of benefits under the Plan, but rather one implicating a policy issue as to "whether undisputed facts about the circumstances of being laid off constitute being 'terminated' as that term is used in ¶ 4 of the Plan." A decision on the meaning of "terminated" resolves not only the standard to be applied to Mr. Clegg's particular claim, but the standard to be applied to all employees who are, or may become, laid off under the Plan.

The parties clearly bargained for the Administrators to make fact-specific decisions about the disability of a particular employee. The use of the term "administration" in ¶ 8 of the Plan is entirely consistent with that intent by empowering the company representatives to determine facts and to apply the provisions of the plan to them. But these decisions, the district court pointed out, do not involve determinations of

standards or rules. To the contrary, the court continued:

"[i]t would be extraordinary, indeed, that a collective bargaining agreement would leave issues of on-going standards of dispute resolution to be resolved by representatives of one party, whether employer or union. In the instant case, the Plan administrators conferred with the company's bargaining representative in reaching their decision concerning Clegg's status. Although the occurrence of such consultation does not alone establish bad faith, the very fact that the Plan administrators recognized the interest of the bargaining representative in their decision reinforces the conclusion that this was not the kind of issue the parties contemplated committing to company-only representatives."

On this basis the district court concluded that "¶ 8 will not bear the construction that the interpretation of 'terminated' in ¶ 4 was committed to the Plan administrators for final [non-arbitrable] determination."[3]

■ The correctness of this holding may be tested by assuming, contrary to the district court, that the arbitrator's decision did draw its essence from the collective bargaining agreement. If such were the case, we would uphold the award even though we might not have agreed that the Plan Administrators' ruling as to "termination" was "final." *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1049 (1st Cir. 1977). If we were obliged to defer to the arbitrator in this case, we would be required to adopt an untenable posture on review of the arbitrator's award. As the district court noted:

"The Board of Arbitration interpreted ¶ 8 of the Plan as, first, vesting in the Plan administrators the power to interpret the meaning of 'terminated' as used in ¶ 4 and second, making the Plan administrators' interpretation 'final' in a

sense that precluded arbitration of the dispute over the meaning of 'terminated.' Implicit is the further consequence that if this court does not vacate the arbitrator's decision of nonarbitrability then this court must either accept jurisdiction to hear *de novo* the dispute over [the] meaning of 'terminated', or else recognize the Plan administrators' decision as 'final'—either in a sense permitting some form of deferential review or else in a sense precluding any review, even by the most deferential standard."

In other words, upholding the award leaves no room for any sensible theory of judicial review. On the one hand, if we infer from the Conlon Award that the Administrators' decision is non-reviewable we would be placing authority in the Administrators to unilaterally reshape the Plan in most significant ways to suit the Company's immediate policy interests. If, on the other hand, the Conlon Award mandates a *de novo* review of the Administrators' decision, *see Hurd v. Illinois Bell Telephone Co.*, 136 F.Supp. 125 (N.D.Ill.1955), *aff'd*, 234 F.2d 942 (7th Cir.1956), *cert. denied sub nom, Seybold v. Western Electric Co.*, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956), the court would be required to assess the intent and policies of the parties to a collective bargaining agreement, where that agreement specifically envisions dispute resolution through arbitration. *See* Art. XXXIII of the Agreement. This result would be completely anomalous; just because deference had been accorded the arbitrator's award, no deference at all would, under *de novo* review be accorded a decision-maker more subordinate than the arbitrator.

Enforcement of the Conlon Award, therefore, leads us to equally unsatisfactory alternatives for judicial review and, moreover, fails to clearly guide our choice. We

---

3. Another reason which, in our view, supports the court's determination is the lack of anything in the contract excluding the Administrator's determination from the arbitration clause, which, as noted, refers to "any dispute ... concerning the true interpretation and meaning of this Agreement." While the arbitrator may determine that some measure of deference, perhaps considerable deference, is required to be given to the Administrator's resolution, there is nothing to indicate that a dispute of this nature is to be exempt from the arbitral process.

simply cannot believe that the parties intended such a chaotic result.

Perhaps we are in this awkward posture because of the incomplete nature of the question presented to the arbitrator in the first instance. The district court found. that the "agreement to arbitrate the arbitrability issue was illusory", and noted that the Board of Arbitration was incapable of resolving all of the questions raised by the Union's grievance if they answered only the question submitted:

> "The parties did not agree, nor did they authorize the Board of Arbitration to decide, who would resolve the question of contract interpretation underlying the union's grievance if the Board determined that the grievance was not arbitrable.... [The parties] purported to submit for arbitration only one aspect of an indivisible set of questions involving not only the arbitrator's jurisdiction but also the court's jurisdiction to review or decide *de novo* the questions regarding the meaning of 'terminated.' What appeared superficially to be a classic 'meeting of the minds' was in legal effect no agreement at all."

 We recognize that judicial review of arbitral awards is extremely limited. *Enterprise Wheel*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. This policy is based on the recognition that the Board of Arbitration and not the courts have the expertise and familiarity required to most fairly and economically resolve labor disputes. *See Devine v. White*, 697 F.2d 421, 435 (D.C.Cir. 1983). Our decision today is not intended to undermine the authority of and respect owed to the arbitrators. To the contrary, we struggled long and hard to arrive at a decision upholding the arbitration award, but because of the peculiar posture of this case we are unable to do so. For all of these reasons, we feel compelled to uphold the judgment of the district court.

We add that in rejecting the notion of non-arbitrability we do not purport to limit the arbitrator's determination as to whether and how much deference is to be owed to the Plan Administrator's interpretation of the word "terminated" and other words. We hold only that in light of the comprehensive arbitration clause in the contract and the breadth of the question in this case, the arbitrator's determination that they were without arbitral jurisdiction did not draw its essence from the collective bargaining agreement.

*Affirmed.*