CLIFTEX CORPORATION, Plaintiff,

v.

LOCAL 377, NEW ENGLAND REGIONAL JOINT BOARD, AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, AFL–CIO, CLC, Defendant.

LOCAL 377, NEW ENGLAND REGIONAL JOINT BOARD, AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, AFL–CIO, CLC, Plaintiff,

v.

CLIFTEX CORPORATION, and Town and Country Slacks, Inc., Defendants.

Civ. A. Nos. 83–2251–Y, 83–2335–Y.

United States District Court,
D. Massachusetts.

Jan. 9, 1986.

Kenneth H. Tatarian, Boston, Mass., for plaintiff.

Leonard Schneider, North Dartmouth, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

These cases arise out of an arbitrator's resolution of a dispute between the parties to a collective bargaining agreement. The arbitrator ordered Cliftex Corporation and Town and Country Slacks, Inc. (the "Companies") to reinstate with back pay three employees; Alda Melo, Emily Sedgwick, and Anna Iria. When the companies refused to comply with the arbitrator's award, Local 377 (the "Union") sought to enforce the award in the Superior Court of Massachusetts. The Companies removed the case to this Court, and in the meantime brought a separate action seeking to vacate the arbitrator's award. In both cases jurisdiction is alleged to exist under § 301 of the Labor Management Relations Act (the "Taft-Hartley Act"), 29 U.S.C. § 185(a). The cases now are before the Court on the parties' cross motions for summary judgment. For the reasons discussed below, the Court allows the Union's motion, denies the Companies' motion, and enforces the arbitrator's award.

## I.

The arbitrator found the following facts, which the parties agree are binding upon this Court.[1] The Companies are related[2] manufacturers of men's clothing in New Bedford, Massachusetts. Each has a collective bargaining agreement with the Union that prohibits discharge without just cause.[3]

On February 3, 1983 an election was held at Cliftex's Plant A for the position of chairperson. The chairperson functions as chief steward at the plant and deals with the company supervisors, the plant manager, and upper level managers on matters relating to enforcement of the collective bargaining agreement. An employee named Alda Melo won the election by a margin of 301 to 43. During the course of her campaign Melo distributed to employees a leaflet containing a statement vice-president Kane believed to be slanderous of his name. Kane scheduled a meeting between him and Melo for February 9, 1983.

Kane met Melo for the first time at the February 9th meeting. A heated discussion ensued. Kane apparently was surprised by Melo's intelligence, and commented that "she was a lawyer ... her grammer was exquisite ... I've never heard language like this from someone in the shop." Kane left the meeting and began asking around about Melo's background. On February 9th or 10th Kane learned that Melo had been a school teacher and had a college degree. This information was not on her employment application.

Kane then contacted the managers of other company facilities to find out whether there were other employees who had made similar misrepresentations. Mike Castaldi, the manager at Town and Country, told Kane that "I have a real genius over here," and he identified Emily Sedgwick. Castaldi described her as "the brightest girl I've run into." Subsequent investigation revealed that Sedgwick failed to list her A.B. degree from Harvard College on her application.

---

1. The parties further agree that there are no disputed issues of fact, and that one of them is entitled to judgment as matter of law. *See* Rule 56, Fed.R.Civ.P.

2. At the time of the execution of the applicable agreements the Companies were separate legal entities with separate agreements with the Union. Town and Country is now a division of Cliftex.

3. Actually, the Cliftex agreement requires "just cause," while the Town and Country agreement requires "sufficient reasonable cause." However, the arbitrator elected to treat these as a single just cause standard. Neither party contests the correctness of that ruling.

On February 16th Cliftex fired Melo. On February 18th Sedgwick and one Anna Iria were discharged. All three employees filed grievances stating as follows:

I have been discharged without just cause. Further I believe the Company is retaliating against me because of Union and concerted activities protected by the National Labor Relations Act. I wish to be reinstated with all wages and benefits restored.

The parties submitted the dispute to arbitration under the provisions of the agreements.

Based on "massive evidence," the arbitrator found that both Melo and Sedgwick "vigorously pursued their rights and the rights of other employees under their respective collective bargaining agreements. Each of their plant managers well knew their interest in and awareness of their contractual rights." (Award at 7 and 13) Although the Companies claimed that all three employees were fired for the misrepresentations on their applications, the arbitrator specifically rejected this argument:

On the basis of all the evidence in this case, I conclude that the Company used the falsifications on their employment applications as a pretext to discharge Melo and Sedgwick. The evidence is overwhelming that the Company's real reason for discharging these employees was their activity on behalf of the union and on behalf of their fellow employees. I find further that but for the Union activity neither Melo nor Sedgwick would have been discharged.

(Award at 14). As to whether discharge under these circumstances violated the contract, the arbitrator ruled that:

The collective bargaining agreements in question here do not by their terms prohibit discipline for Union activity. Nevertheless, I conclude that such improper motivation must be considered within the just cause standard of discharge. As a matter of industrial relations it is simply not appropriate to discharge an employee because of his or her Union activity.

(Award at 14–15). The arbitrator further found that the discharge of Iria was without just cause. In his view, the evidence suggested that the Companies wished to discharge Iria simultaneously with the two Union activists. From this he evidently inferred that her discharge was an attempt to cover up the real reasons for discharging Melo and Sedgwick. Accordingly, the arbitrator ordered all three reinstated with back pay.

## II.

In the seminal case of *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Supreme Court held that § 301 of the Taft-Hartley Act imposes upon the federal courts a duty to "fashion from the policy of our labor laws" a substantive federal common law to be applied to suits for enforcing collective bargaining agreements. *Id.* at 456, 77 S.Ct. at 918. Central to this federal common law of labor agreements is the primacy of arbitration in the enforcement scheme. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Accordingly, a federal court must enforce an arbitrator's award "so long as [the award] draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. A court "may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). The established rule in this circuit is that an arbitrator's award will not be disturbed unless it is "unfounded in reason and fact, ... based on reasoning 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling,' ... or is mistakenly based on a crucial assumption which concededly is a nonfact."

*Bettencourt v. Boston Edison,* 560 F.2d 1045, 1050 (1st Cir.1977).

Faced with this presumption of the correctness of the arbitrator's decision, the Companies nonetheless contend that the award must be vacated. They argue that the sole remedy available to an employee who is discharged for engaging in union activities is to file an unfair labor practice charge with the National Labor Relations Board (the "Board"). Although it is unclear whether the Companies' attack is on the jurisdiction of the arbitrator to render the award or on the substantive basis of the decision, in either case their position is utterly without merit.

■ It is too late in the day for the Companies seriously to contest the authority of the arbitrator to address the merits of the unfair labor practice charge. *In Dubo Manufacturing Company,* 142 NLRB 431 (1963), *enforced,* 353 F.2d 157 (6th Cir. 1963), the Board held that if the party filing an unfair labor practice has voluntarily agreed to submit the matter to arbitration it will defer further processing of the case. After the arbitrator renders an award the Board, if the parties wish, will review the arbitrator's treatment of the unfair labor practice charge under the standards announced in *Speilberg Manufacturing Company,* 112 NLRB 1080 (1955), and *Olin Corporation,* 268 NLRB 573 (1984). The Supreme Court long has upheld this power to defer processing of certain cases pending completion of arbitration. *See e.g., Carey v. Westinghouse,* 375 U.S. 261, 270 n. 7, 84 S.Ct. 401, 408 n. 7, 11 L.Ed.2d 320 (1964). Here the Board deferred processing the grievants' charges under the *Dubo* doctrine because arbitration already had been sought. The Companies therefore are wrong in suggesting that the grievants were limited to their remedy at the Board. More importantly, it appears that the parties and the arbitrator agreed at the hearing that the arbitrator would not decide whether the Companies had violated the National Labor Relations Act (the "Act").[4] Instead, evidence of antiunion animus was considered only for the purpose of determining whether there was just cause under the agreement. Accordingly, the Companies' argument that the arbitrator impermissibly based the award on his interpretation of the Act is not only without basis in law, but also inapplicable to the facts of this case.

■ The Companies' arguments attacking the arbitrator's substantive interpretation of the agreements likewise are unavailing. While admitting that the agreements required just cause to discharge the grievants, the Companies urge the Court to focus on the fact that the agreements do not explicitly prohibit discharge or discipline of employees for union activity. The Companies argue that this absence of an anti-discrimination provision in the agreements is fatal to the grievants' case. The logical extension of this argument, which the Companies not surprisingly leave unstated, is that it is within the concept of just cause for a company to discharge an employee in retaliation for her pursuing rights guaranteed under § 7 of the Act. The Court has found absolutely no authority which supports so bold a proposition.

■ Seemingly undeterred by the novelty of their position, the Companies go on to argue that the award does not draw its essence from the agreement because the arbitrator's conclusion that just cause does not include anti-union animus rests on his "own view of industrial relations." This argument ignores the dynamic nature of the collective bargaining process. When the parties agreed that discharges would only be for just cause they did not necessarily limit themselves to some static definition of that term. It is commonplace for parties to a collective bargaining agreement consciously to agree on ambiguous terms with the intent that an arbitrator will further define their agreement at a later date. To do otherwise would require the

---

**4.** Although the Court was not provided a transcript of the hearings, the Union's representations concerning this agreement are uncontested by the Companies, and are supported by the fact that the award nowhere mentions the Act.

parties to set upon the impossible task of addressing every possible contingency that might arise during the life of the agreement. The Supreme Court, recognizing that the inability of parties to anticipate or address all future problems necessarily will leave "gaps" in collective bargaining agreements, has nourished the view that arbitrators often must settle labor disputes by reference to the "common law of the shop." *Warrior & Gulf,* 363 U.S. at 578–80, 80 S.Ct. at 1350–51. This "industrial common law—the practices of the industry, and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *Id.* at 582, 80 S.Ct. at 1352.

■ The arbitrator here found that "as a matter of industrial relations it is simply not appropriate to discharge an employee because of his or her Union activity." (Award at 15). This view of the common law of the shop is well supported and not unreasonable. *See e.g., Farmer Brothers Co.,* 64 LA (BNA) 901, 904–5 (1975) ("By necessary implication, if not expressly, collective agreements every bit as much as the statute, typically proscribe anti-union disciplinary actions discriminating against employees because of their union acts and views."); *and Dura-Containers, Inc.* 67 LA (BNA) 82, 84 (1976) (Discharge "was in violation of the NLRB and therefore without just cause.") The arbitrator's conclusion here does not violate the standards established by *Bettencourt.* A Court should not deny enforcement of an arbitrator's award simply because the arbitrator determined that discharging an employee for protected activities is a violation of the contract. *International Brotherhood of Electrical Workers v. Sho-Me Power,* 715 F.2d 1322, 1324 (8th Cir.1983).

■ The Companies also argue that the award is invalid because it relies on the arbitrator's interpretation of the Act, not the contract. It is true that there exists a philosophical dispute among the commentators over the proper role of external law in contract disputes, *see generally* F. Elkouri and E. Elkouri, *How Arbitration Works* 366–370 (5th ed. 1985), and that an arbitrator exceeds his authority if his award is "based *solely* upon the arbitrator's view of the requirements of enacted legislation." *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361 (emphasis added). But the mere fact that an arbitrator finds facts with statutory significance does not implicate these concerns. Here the arbitrator specifically limited the basis of his decision to the requirements of the contract. Nowhere in the opinion did he ever mention the Act. Moreover, it is not objectionable that the arbitrator might have "looked to 'the law' for help in determining the sense of the agreement." *Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361.[5] As one leading treatise notes, "most arbitrators would agree ... [that] where the contract provision being interpreted or applied has been formulated loosely, the arbitrator may consider all relevant factors, including relevant law." *How Arbitration Works, supra,* at 370.

■ In short, there is no reason not to enforce the arbitrator's award. The Companies' argument that the contracts reserve to them the right to discharge employees in retaliation for union activities is singularly unpersuasive. The arbitrator ordered the employees reinstated with back pay on July 12, 1983. On June 15, 1984 this Court entered a preliminary injunction ordering the reinstatement of the grievants pending further action by the Court. In order to give full remedial effect to the arbitrator's reinstatement award the Companies must pay, in addition to the back pay ordered by the arbitrator, the wages that would have been earned had the award been implemented between the time of the decision and the preliminary injunction, less

---

**5.** *Alexander v. Gardner-Denver,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and *Barrentine v. Arkansas Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), cited by the Companies, are inapposite. Those cases hold only that certain substantive individual rights may not be waived by the majority in the collective bargaining context. Because neither case limits "the Law" to which an arbitrator may look, they have no application here.

any amount earned during that period. *Cf. Service Employees International v. Washington Hospital Center*, 115 LRRM (BNA) 3581, 3583 (D.D.C.1983). Furthermore, the Court rules that prejudgment interest on this sum is appropriate. *Id.* at 3583 (citing *Miller v. Robertson*, 266 U.S. 243, 257–58, 45 S.Ct. 73, 78, 69 L.Ed. 265 [1924]).

Finally, the Court rules that this is an appropriate case for imposing sanctions against the Companies. An award of attorney's fees is appropriate when a party, "without justification," refuses to comply with an enforceable award. *Courier Citizen v. Boston Electrotypes Union No. 11*, 702 F.2d 273, 282 (1st Cir.1983); *Local No. 252 v. Narragansett Improvement Co.*, 503 F.2d 309, 312–13 (1st Cir.1974); *International Union of Electrical Workers v. Peerless Press Metal Corp.*, 489 F.2d 768, 769 (1st Cir.1973). The Court rules that the Companies' positions are unsupported by law or fact, and are asserted in bad faith. For example, the Companies' arguments misrepresent the arbitrator's findings. They contend that "the arbitrator did not have contractual authority to decide whether an anti-union motivation vitiated otherwise sufficient just cause for discharging these employees." In fact, the arbitrator never found that the companies' pretextual reasons constituted just cause. Quite to the contrary, he found that but for the union activity of Melo and Sedgwick the employees would not have been fired. Stripped of this embellishment the Companies' argument is that by engaging in the union activity the employees established just cause for discharge. The Companies' inability to cite any authority to support this rather startling position justifies an award of legal fees. *Teamsters Local Union No. 764 v. J.H. Merritt*, 770 F.2d 40, 43 n. 2 (3d Cir.1985).

Accordingly, it is ORDERED:

1) That the Union's motion for summary judgment is ALLOWED and that Cliftex's motion for summary judgment is DENIED;

2) Cliftex shall comply with the arbitrator's award;

3) Cliftex shall pay each of the employees the amount of wages she would have earned between July 12, 1983 and June 15, 1984, less any amount earned during that period, plus prejudgment interest on that sum from July 12, 1983 until this date at the prevailing legal rate; and

4) The parties are ordered to appear before this Court on Wednesday, January 29, 1986 at 2:00 p.m. for an hearing to determine the reasonable attorney's fees to be awarded the Union.