TEAMSTERS LOCAL UNION NO. 122, Plaintiff,

v.

AUGUST A. BUSCH & CO. OF MASSACHUSETTS, INC., Defendant.

Civ. A. No. 85–3378–Mc.

United States District Court, D. Massachusetts.

May 26, 1987.

Stephen R. Domesick, Boston, Mass., for plaintiff.

Christopher J. Perry, Arthur P. Menard, Hale and Dorr, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This matter came before the Court on cross-motions for summary judgment. The parties have filed numerous memoranda and other supporting papers and have favored the Court with oral argument.

The facts are essentially undisputed. The plaintiff Teamsters Local Union No. 122 ("the Union") is the exclusive collective bargaining representative for the drivers, warehousemen and helpers employed at the Medford, Massachusetts facility of defendant August A. Busch & Co. of Massachusetts, Inc. ("the Company"), a Massachusetts corporation engaged in Medford in the business of wholesale beer distribution. The Union and the Company were parties to a collective bargaining agreement effec-

tive from December 1, 1982 through November 30, 1985 ("the Agreement").

Section 10 of Article XXI of the Agreement states in full:

No conventional type trailer truck with a box 26 feet or over in length shall be used for retail deliveries in downtown Boston. Conventional type trailer trucks, with a box 26 feet or over, used for retail deliveries in the City of Boston shall have a working crew of three men, consisting of a driver and two helpers.

In 1984 a dispute arose between the parties concerning the Company's announced intention to use tractor trailers to make retail deliveries outside the City of Boston with a working crew of two men, a driver and a helper. The Union objected to this plan and filed a grievance, consisting of a letter dated July 2, 1984 from James F. Keegan, Secretary Treasurer/Business Agent of the Union to Christopher Stevens, General Manager of the Company. It states that Keegan and Stevens "met to discuss the Company's unilateral decission [sic] to utilize trailors [sic] as part of its regular delivery operation." According to this letter, the "matter of grievance" was "[t]he Company's unilateral decission [sic] violates the Agreement and past practice." Eventually the grievance was referred to arbitration by the Company, after some of the issues raised by the Company's plan were resolved by negotiations between the parties, according to the Opinion and Award of Arbitrator Bruce Fraser dated May 13, 1985 ("Interim Award"). The Arbitrator held hearings on three dates and then decided the issue to which the parties agreed, namely: "Is there a grievance which is arbitrable?" Arbitrator Fraser concluded: "There is a grievance which is arbitrable." It "concerns the interpretation of ARTICLE XXI, Section 10. The grievance was processed pursuant to ARTICLE VII without defect and pursuant to this same provision, is properly before the Arbitrator." The Union did not seek to vacate this interim award. The Arbitrator held another hearing on June 5, 1985 and on August 2 or 3, 1985 (depending on whether one accepts the date on the Award or that on the Opinion) issued an Opinion and Award ("Opinion and Award").

The uncontradicted evidence presented at the evidentiary hearing before Arbitrator Fraser established that in 1968 and 1969 the Company used trailer trucks to make retail deliveries, that the use of the trailer trucks was confined to the City of Boston, exclusive of downtown, and that the trailer trucks operated with a working crew of three men, a driver and two helpers. The uncontradicted evidence also established that the Company did not use trailer trucks for retail deliveries in 1970 and continuing at least through the date of the hearing, June 5, 1985, with the exception of a special promotional event in 1983 at Hanscom Air Force Base, which Arbitrator Fraser concluded was not a retail delivery. The evidence presented at the hearing established that between 1967 and June 5, 1985, the Company had never used tractor trailers when making retail deliveries within its sales area outside of the geopolitical boundaries of the City of Boston with the exception of a special promotional event at Hanscom Air Force Base. The differing interpretations given to these undisputed facts by the parties is the crux of the controversy in this case.

The Arbitrator reasoned as follows in the August Opinion:

However, the language of Section 10, taken with the nature of the Company's sales area, leads to the conclusions that the parties never intended Section 10 to limit tractor trailer use solely to the City of Boston. At least since the late 1960s, the Company's sales area has consisted of three sectors: downtown Boston; a band of area surrounding the downtown area and extending to the City limits; and a second band beginning at the City boundaries and extending roughly to Route 128. Reference to Section 10 shows that the first sentence places limits on the use of tractor trailers in the downtown area while the second places limits on their use in the surrounding area within the City of Boston. From the fact that the parties initially placed limitations on two of the three sales area segments, were aware of the third, and

over the years reviewed the contract provisions and chose not to address the third, persuades me that they never intended Section 10 to place any limitations of tractor trailer use in this outer segment of the sales area. Thus, I find that the language of Section 10 does not limit the Company from operating tractor trailers outside the City of Boston with but a single helper[.]

On August 29, 1985, the Union filed the Complaint in the instant action, seeking a declaratory judgment that the Opinion and Award dated August 3, 1985, are not binding upon the plaintiff and are unenforceable and void under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, that the Court vacate and set aside the Opinion and Award, and other just and proper relief. The Company answered and brought a three-count Counterclaim. The present cross-motions for summary judgment essentially request relief for each party on all of its claims.

As the Company points out, the First Circuit has made it clear that the arbitration process is subject only to minimal judicial scrutiny. In *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1048 (1st Cir. 1977), the Court of Appeals stated: "Where parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievances the arbitration award is normally non-reviewable by a court." That Court also stated: "Exceptions to the rule of non-reviewability are ... few and of a most limited nature." *Id.* at 1049. More recently, in *Local 1445, United Food & Commercial Workers International Union v. Stop & Shop Cos.*, the Court of Appeals stated:

> In *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045 (1st Cir.1977), we held that a court may review and set aside an arbitrator's decision only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial

assumption that is concededly a non-fact. *Id.* at 1050.

776 F.2d 19, 21 (1st Cir.1985).

As explained at oral argument, the Union asserts four grounds that it claims justify vacating the Arbitrator's award. Two of those reasons, according to the Union, do not involve the deference typically shown by a court in a § 301 suit to an arbitrator's decision. The first of these two "non-deference" grounds is that the Arbitrator, according to the Union, exceeded his authority by not deciding the Union's grievance and by framing a different, narrower issue for his decision. Relying in particular on *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers' Union, Local No. 1*, 611 F.2d 580 (5th Cir.1980), the Union argues that the Arbitrator ignored the limits on his authority defined by the issues submitted to him by the parties and the parties' agreement. The Union argues that if the Arbitrator fails to abide by these limits, there is no "presumption of unreviewability" (a phrase quoted from *Stop & Shop, supra*, at 22).

The Union points out that it identified the additional issues at the hearing but the Arbitrator refused to decide them. (See Exhibit # 2 to Kaitz Affidavit, Docket # 19, Transcript at 4–25, 4–26, 4–36.) The Union maintains: "The transcript demonstrates that the Union did everything, short of walking out of the hearing, to make clear the arbitrator was not authorized to frame his own issue and that he must decide the grievance submitted by the Union which he had already found was arbitrable." The May 13, 1985 Interim Award, however, made it clear that the arbitrable grievance concerned the interpretation of Section 10 only. As a matter of logic, to accept that the Arbitrator thereafter had to "decide the grievance ... which he had already found was arbitrable" would mean accepting the limitation of the arbitrable issue to Section 10. Yet the Union wants to have its cake and eat it too: it wants the Arbitrator to decide the grievance submitted but not restrict his decision to the part of that grievance determined to be arbitrable.

In addition, the Union relies on *United Steelworkers v. Warrior & Gulf Navigation Co.*, in which the Supreme Court stated: "the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made." 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Taken in context, that statement implies, not that the reluctant party must agree to arbitrate at the time of the dispute, but rather that it must have agreed to submit the grievance to arbitration in the contract. *See id.* at 582–83, 80 S.Ct. 1352–53; *see also Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic Workers Int'l Union*, 600 F.2d 322, 326–27 (1st Cir.1979).

The Company makes a number of arguments in opposition to the Union's claim that the Arbitrator exceed his "authority". Most of these arguments are either incorrect or unconvincing, so I will not mention all of them. First, the Company argues that there is no basis in First Circuit precedent for such a challenge to arbitral "authority". This assertion is clearly incorrect, as demonstrated by an examination of the Court of Appeals case of *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273 (1st Cir.1983), which the Company itself cites in one of its memoranda. In *Courier-Citizen*, the Court of Appeals held: "While an arbitrator has broad power to fashion remedies on issues the parties have empowered him to resolve, he lacks authority to decide questions the parties have not agreed to submit to him. Courts will not enforce awards exceeding the authority conferred in the submission." *Id.* at 281 (citations omitted) (note that the First Circuit cited *Piggly Wiggly* as support after the first sentence). Even *Piggly Wiggly*'s statement that the arbitrator, having been presented with issues contained in the grievance, "was not free to reinterpret the parties' dispute and frame it in his own terms," 611 F.2d at 585, although superficially inconsistent with upholding the arbitrator here, does not mandate a different result regarding the August Opinion and Award, since any "reinterpreting" of the issue occurred in the Interim Award, which the Union is not directly challenging. At any rate, as discussed below, *Courier-Citizen* emphasizes *exceeding* authority, not narrowing it.

The Company interprets the Union's argument on "authority" as a "thinly-veiled attempt to challenge the arbitrability of the dispute," a challenge that the Company claims is time-barred. The Company states that this same argument was presented to Arbitrator Fraser in an earlier proceeding, resulting in the Interim Award, an award which the Company asserts the Union failed to challenge in a timely manner. The Company argues that, if this Court does review Arbitrator Fraser's decision that the grievance was arbitrable and that he had jurisdiction to decide it, the standard of review is the deferential and narrow standard reiterated in *Stop & Shop*, citing *Local 369, Utility Workers Union v. Boston Edison Co.*, 752 F.2d 1, 2–3 (1st Cir.1984). The Union is correct in the latter contention. *See Local 369, supra*, at 2–3.

The Union did deny the allegation in the Company's Counterclaim that the "March [sic] 13, 1985 finding of arbitrability has not been challenged by the Union under any provision of law" and that the "March [sic] 13, 1985 Award is now immune from such challenge, no complaint having been timely filed." And the Union's counsel did state rather obscurely at oral argument that the Interim Award establishes the first ground for vacating the Arbitrator's Award. I am not convinced, however, that the Union's argument is an attempt to challenge the arbitrability of the dispute or other aspects of the Interim Award, as the Company claims. The Complaint does not specifically request that this Court vacate the Arbitrator's arbitrability holding. In addition, the Union appears to acknowledge in the section of its brief quoted above that the Arbitrator in the Opinion and Award was obliged to decide merely the grievance determined to be arbitrable in the Interim Opinion and Award.

■ I do not need to reach this issue, however, because the Company has made a

further argument that directly defeats the Union's challenge to the Arbitrator's "authority," regardless of whether the challenged narrowing of the issues is considered to have taken place in the interim rather than the final award. The Company argues: "if the Union can make any claim, it is that the grievance is *broader* than the issue formulated by the Arbitrator." The Arbitrator here did not exceed the limitations placed on him. At worst, he "frame[d] [the parties' dispute] in his own terms," *Piggly Wiggly, supra,* at 585, an act which the parties have not shown is improper under the law of this Circuit. The *Courier-Citizen* court states that "[c]ourts will not enforce awards *exceeding* the authority conferred in the submission." 702 F.2d at 281 (emphasis added). As a matter of common sense, an overly restrictive interpretation of the grievance does not *exceed* an arbitrator's authority. This "non-deference" argument must be rejected.

The Union's second "non-deference" argument is that the Arbitrator exceeded his authority by improperly modifying the terms of the parties' agreement, violating the "no-modification" clause in Article VII of the Agreement, which states: "The decision of the arbitrator shall be final and binding upon the parties, provided, however, that the Aribtrator [sic] shall have no power to amend, modify, alter or add to any term of this Agreement." The Union argues that a memorandum of the parties attached to the Agreement, dated March 22, 1983, gives a reviewing court *de novo* authority to determine whether an arbitrator has violated the "no-modification" clause; deference is not required to be given to an award alleged to be in violation.

This March 22, 1983 memorandum states: This letter supplements the collective bargaining agreement entered into between us today as of December 1, 1982. It is mutually understood that, with reference to Article VII of such Agreement, wherein we have mutually agreed that an arbitrator shall have no power to amend, alter or add to any of the terms of the Agreement that if either party contends that this provision has been vio-

lated, the matter may be referred to any court of competent jurisdiction which shall have the power to determine the question, and which shall interpret this Agreement in accordance with the commonly accepted meaning of the words used herein and the principle that the parties are agreed that, as stated in Article IX of said Agreement, no restrictions are intended on management of the Company other than those expressly set forth herein, as above defined.

The Union argues that the Arbitrator's decision was incorrect and must be vacated because it modifies, alters or changes the terms of the contract.

■ The Union's argument actually breaks down into two propositions: first, that the Arbitrator's decision violated the "no-modification" clause, and, second, that this Court need not accord deference to an arbitrator's award alleged to be in violation. The Company describes as without merit the Union's claim that the Arbitrator violated the "no-modification" clause. The Company argues that, as in *Stop & Shop, see* 776 F.2d at 22, the Award simply clarified the section; it did not add to, subtract from, or alter it. In *Stop & Shop,* the arbitrator concluded that the union's acceptance of reasonable modifications requested by the employer would be implicit. *See id.* at 21. Here, in essence, Arbitrator Fraser concluded that the absence of limitations on tractor-trailers outside Boston was implicit.

The Company also argues that the Union conspicuously ignores a controlling decision of the Court of Appeals for the First Circuit, *Mobil Oil, supra.* In *Mobil Oil,* a grievance regarding subcontracting was submitted to an arbitrator. Mobil maintained before the arbitrator that the dispute "was not arbitrable because there was no express provision regarding subcontracting in the collective bargaining agreement and the arbitration clause ... limited the scope of the arbitrator's power to 'render a decision of a proper grievance by interpreting the express provisions of this agreement.'" *Id.* at 323–24. The arbitrator decided that the dispute was arbitrable

and that Mobil had violated the collective bargaining agreement. *Id.* at 324. The *Mobil Oil* court found no express provision excluding subcontracting from arbitration. *Id.* at 328. The court concluded, however, that the arbitrator "did interpret the terms and conditions of the agreement," and found in the arbitrator's decision "specific reference to violations of" various provisions of the agreement. *Id.* The Company here argues that the present case is stronger than *Mobil Oil*, because Arbitrator Fraser was faced with provisions directly addressing the Company's use of tractor trailers. I agree and find that a comparison of this case with *Mobil Oil* establishes that no violation of the "no-modification" clause occurred here.

As for the second prong of the Union's argument—that this Court need not give deference to an award alleged to be in violation of the "no-modification" clause because of the March 22, 1983 letter agreement—both parties have directed this Court's attention to the decision in *Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico*, 583 F.2d 1184 (1st Cir.1978). Although the Court of Appeals did say in that case that if "called upon to interpret possible ambiguities in the contract, we would be strongly influenced by the course of performance," it added that "it is not our job to interpret this contract. It is the arbitrator's job." *Id.* at 1187. The Union argues that in the present matter it *is* this Court's job to interpret the contract because of the March 22, 1983 letter agreement. That being the case, the Union argues, the course of performance here dictates that this Court vacate the Arbitrator's decision. The Company on the other hand stresses the *Westinghouse* pronouncement that it is the arbitrator's job to interpret the contract. As discussed below, I conclude that the March 22, 1983 letter agreement does not dictate that it is my job to interpret the contract *de novo* and does not affect the deferential review required by *Stop & Shop.*

The Company also argues, relying on *Local 369, supra,* that deferential review is mandated because the question of the Arbitrator's jurisdiction under the "no-modifica-

tion" clause was presented to and decided by the Arbitrator. In *Local 369*, the Court of Appeals held:

Decisions on questions expressly committed to the arbitrator for determination are reviewable only to the extent necessary to determine if the arbitral award "draws its essence from the collective bargaining agreement." *Enterprise Wheel,* 363 U.S. [593] at 597, 80 S.Ct. [1358] at 1361 [4 L.Ed.2d 1424].

752 F.2d at 3. I am not convinced that this holding applies to the present case. Although Arbitrator Fraser definitely considered the Union's position on the "no-modification" clause, I do not think the Union's arguments before the arbitrator amount to "questions expressly committed to the arbitrator for determination." In *Local 369*, the parties had expressly asked the arbitrator to decide the arbitrability issue, which the parties in the present matter did not do in regard to the "no-modification" clause.

■ I also do not accept the Company's position that the March 22, 1983 letter agreement gives neither party any rights not previously possessed under the Agreement and is "fundamentally meaningless." It would be illogical for the parties to draft such a letter if they did not feel it added anything to their agreement. I think that the most sensible interpretation of this letter is that it provides an opportunity for a party to the contract to challenge an arbitrator's actions as violative of the "no-modification" clause *at the time* that the arbitrator is found to be violating the "no-modification" clause. The Union's counsel himself seems to have interpreted the March 22, 1983 agreement this way at the June 5, 1985 hearing:

MR. DOMESICK: ... [after reading part of the March 22, 1983 letter]

What that suggests to me is that if, as apparently exists at this point, there is a question, certainly in the Union's mind, that the arbitrator's power as limited by the contract is being violated, then we have—and the parties have agreed that we have—the right to seek in effect a

declaratory judgment by a court as to whether you can proceed.

ARBITRATOR FRASER: In that case, Mr. Domesick, you should do so, if you feel I cannot.

(Exhibit # 2 to Kaitz Affidavit, at 4–30). It seems disingenuous on the Union's part to assert now that this letter mandates *de novo* review. Having foregone its opportunity to obtain a declaratory judgment at the time of the hearing, I conclude that the Union can have the arbitrator's decision reviewed only under the deferential standard of *Stop & Shop*. Even if I used a less deferential standard, however, I would not be inclined to vacate the Arbitrator's decision, which comports with my interpretation of the Agreement, especially because the March 22, 1983 letter specifically reiterates the importance of the management rights clause (Article IX).

■ The Union also argues that the Arbitrator exceeded his authority by mistakenly basing his decision on a crucial assumption that is concededly a non-fact, relying on *Electronics Corp. of America v. International Union of Electrical, Radio & Machine Workers, Local 272*, 492 F.2d 1255 (1st Cir.1974). The Union argues that there was uncontradicted evidence before the Arbitrator establishing facts about which the Arbitrator stated there *was* no evidence. The Union argues that the Arbitrator's decision is clearly premised on his conclusion that Section 10 has never been given application by the parties, a conclusion which the Union argues is so faulty as to invalidate the Award, because the Company for seventeen years used tractor trailers for retail deliveries only in the City of Boston and only with three men. The Union argues that this conduct reflects the Company's contractual obligation under Section 10. The Union interprets the Arbitrator as stating in his Opinion that if there had been a course of performance regulating the use of trailers he would have decided the case differently. Since there was such a course of performance, argues the Union, and it was conceded by the Company, the Award is not entitled to deference.

The Company responds that the Union's reliance on *Electronics Corp.* is misplaced, because in that case the *sole* basis for the arbitrator's award was his mistaken reliance on the inaccurate record of the employee's suspension. In the present case, the Company argues, the Union is in reality objecting not to the Arbitrator's findings of facts but to the conclusions he drew from these facts, an objection that cannot form the basis for vacating an arbitrator's award under the principle of *Electronics Corp.* I agree with the Company's assessment of the Union's argument and hold that this case does not fall into the *Electronics Corp.* exception to non-reviewability. *See Stop & Shop, supra,* at 22 (where the arbitrator based his decision on his perception of the parties' intent, which in turn was based on a record neither party disputes, the decision is not mistakenly based on a crucial assumption that is a proven non-fact).

The Company further argues that the Union inaccurately represents to the Court that evidence was presented to the Arbitrator that the parties had addressed the use of tractor trailers outside the City of Boston. According to the Company, "[t]here is absolutely no evidence in the record to support the Union's position that the evidence before the Arbitrator demonstrated that the Company's rights to use tractor trailers were 'confined' ". I disagree with this contention, because another arbitrator could conceivably have interpreted the facts as the Union does here, even though this interpretation seems to me unlikely. But what is crucial in the present matter is what *this* Arbitrator did, and he concluded, based on the factual record before him and the language of Section 10, that the Company could use tractor trailers outside of Boston.

■ Finally, the Union argues that the Arbitrator exceeded his authority by dispensing his own brand of industrial justice by refusing to find Section 10 clear and unambiguous. The Union argues that the Award does not draw its essence from the Agreement, so it is not entitled to deference. The Union relies in particular on the

decision of the Court of Appeals for the Sixth Circuit in *Morgan Services, Inc. v. Local 323, Chicago & Central States Joint Board,* in which that court said:

> [W]hen the collective bargaining agreement answers the question submitted to the arbitrator in clear and unambiguous language, the arbitrator errs if he looks beyond the contract and uses extraneous considerations to render the contract's clear language ineffective. A provision in a collective bargaining agreement cannot be treated as ambiguous and then ignored simply because it varies from the arbitrator's expectations.... In substituting his view of what the parties should have agreed to for what the parties actually did agree to, the arbitrator was dispensing "his own brand of industrial justice." *See Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361.

724 F.2d 1217, 1224 (6th Cir.1984).

The Union argues that Section 10 is unambiguous and that this Court need not defer to the Arbitrator's analysis because it denies to the terms in the Agreement their commonly accepted meaning. The Union also asserts that the Arbitrator treated Section 10 as ambiguous because it varied from his expectations. The Union states: "No matter how you cut it, his view of § 10 is still baloney." In other words, the Union argues that this section has only one meaning—that attributed to it by the Union.

The Company argues that Section 10's silence with respect to the third area segment, particularly in view of the total restriction in Section 10 on the use of tractor trailers in downtown Boston, hardly renders the provision clear and unambiguous. The Company interprets the Union's argument as an assertion that this silence indicates a finding of a total restriction on the use of tractor trailers in the third area segment. However, the Company correctly points out that the parties expressed total restrictions when they intended them, as in the first sentence of Section 10. The Company argues alternatively that, if Section 10 is unambiguous, the only rational interpretation of it is the one made by the Arbitrator and notes that the Union fails to point out which terms of Section 10 were not accorded their commonly accepted meanings. Even if this Court would interpret the contract differently from the Arbitrator, the award would still be inviolable, according to the Company. *See Westinghouse, supra,* at 1187 ("An arbitrator who interprets a contract differently from a court has not necessarily exceeded his authority by modifying the contract."); *see also United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The Company also argues that under either of the remaining *Stop & Shop* standards (other than "a crucial assumption that is concededly a non-fact"), the Arbitrator's Award must be upheld. According to the Company, the Arbitrator made his decision based upon his review of Section 10 as well as the Agreement's management rights clause. The Union's position, according to the Company, is that "unless the Union *affirmatively entitles or permits* an employer to take certain action ..., the employer may not so act," a position which the Company says is palpably faulty and would eviscerate the Company's management rights. I agree with the Company's characterization of the Union's argument, although the Arbitrator's decision does not, as the Company implies, explicitly mention the management rights clause in the rationale for the decision, but only mentions it as a relevant contract provision. More importantly, the Arbitrator construed the contract as the Company does, an interpretation that I may not vacate unless it falls into one of the *Stop & Shop* exceptions to non-reviewability. Even if the Arbitrator's decision is incorrect (which I do not believe it is), it is certainly not "unfounded in reason and fact" or "based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling," *Stop & Shop, supra,* at 21.

Accordingly, summary judgment on the Union's Complaint is granted in favor of the Company, and the Company's motion for summary judgment must be allowed as to Count I of the Counterclaim, which re-

quests this court to confirm the August 2, 1985 Award. The Company has also requested this Court to grant summary judgment on Count II of its Counterclaim, which alleges that by filing the instant action the Union has breached and is breaching its Agreement with the Company, and on Count III of its Counterclaim, which alleges that "[t]he Union's action in filing its Complaint herein is groundless, unwarranted, frivolous and vexatious within the meaning of 28 U.S.C. Section 1927, and Rule 11 of the Federal Rules of Civil Procedure." As to Count II, I assume, although the Company never so states, that the basis for its allegation that the Union has breached the Agreement by filing this lawsuit is that the Agreement provides for "final and binding" arbitration. I find that allowing a party to an arbitration award who obtains a court order confirming the award to collect damages from the losing party for breach of contract would be contrary to the purposes of our national labor law system, at least where the losing party has made a good faith argument challenging the award. I therefore grant summary judgment for the Union on Count II of the Counterclaim. As to Count III, I find that the Company has shown no facts in support of this claim and grant summary judgment in favor of the Union on Count III of the Counterclaim.

The Company also requests this Court to grant it attorney's fees and costs. As the Company argues, "[a]n award of attorney's fees is appropriate when a party, 'without justification,' refuses to comply with an enforceable award." *Cliftex Corp. v. Local 377, New England Regional Joint Board*, 625 F.Supp. 903, 909 (D.Mass.1986) (Young, J.); *accord, Courier-Citizen, supra*, at 282. The cases cited by the Company in support of its request do not convince me that attorney's fees are appropriate in the present matter. *See Local Union No. 251 v. Narragansett Improvement Co.*, 503 F.2d 309, 312–13 (1st Cir.1974) (where appellant's view was "obviously unacceptable," counsel fees for appeal were

awarded); *International Union of Electrical, Radio & Machine Workers v. Peerless Pressed Metal Corp.*, 489 F.2d 768 (1st Cir.1973) (per curiam) (attorney's fees for district court proceedings awarded because of intransigence of employer in resisting enforcement of the arbitration award after a previous decision of the Court of Appeals); *Cliftex, supra*, at 909 (case appropriate for attorney's fees where employers' positions were "unsupported by law or fact, and [were] asserted in bad faith"). The Union's challenge to the Arbitrator's Award was not so "without justification" that attorney's fees are appropriate, especially where the Company itself has made a bald assertion regarding First Circuit precedent that was clearly incorrect.