**LOCAL 369, UTILITY WORKERS UNION OF AMERICA, AFL–CIO, Plaintiff,**

v.

**BOSTON EDISON COMPANY, Defendant.**

Civ. A. No. 80–2388–K.

United States District Court, D. Massachusetts.

May 18, 1984.

725 F.2d 156, 160–61 (2d Cir.1983) (*Bivens* action dismissed in the face of uncontroverted affidavits).

Joanne F. Goldstein, Framingham, Mass., for plaintiff.

Morgan, Brown, Kearns & Joy, Glenn E. Dawson, Keith McCown, Boston, Mass., for defendant.

## Opinion

KEETON, District Judge:

### I.

This is an action for judicial review of a determination by a Board of Arbitration that a grievance filed by plaintiff Local 369 ("the union") against defendant Boston Edison Company ("the company") was not arbitrable under the terms of the collective bargaining agreement ("the Agreement") between the parties. The underlying grievance arose from a determination by company officials, acting as administrators of the Industrial Accident Disability Benefits Plan ("Plan"), that an employee was no longer eligible to receive benefits under the Plan after he was laid off from work.

The Plan, set forth in an appendix to the Agreement, provides for the payment of benefits to supplement an injured employee's state worker's compensation benefits. The Plan states in pertinent part:

(4) Benefits shall cease when an employee is retired or when his employment is otherwise terminated.

\*      \*      \*      \*      \*      \*

(8) The administration of the Plan shall be under the direction of the Medical Director and the Vice President in charge of Employee Relations of the Company whose decision with respect to all questions arising thereunder, including questions respecting the duration of total and partial incapacity for work, shall be final.

Art. XXXII of the Agreement states in part:

Any dispute arising between the parties during the term of this Agreement concerning the true interpretation and meaning of this Agreement or respecting rates of pay, wages, hours of employment or other conditions of employment which have not been settled by this agreement shall be treated as a grievance . . .

The Agreement also provides for mandatory arbitration by a Board of Arbitration of any grievance that is not settled. Article XXXIII provides that the decision of the majority of the Board is "final and binding upon both parties." Also, it states that the Board does not have power to add to, subtract from, or modify any of the terms of the Agreement.

James Clegg, a disabled employee, was receiving benefits from the company under the Plan when, in October of 1978, the company laid him off as part of a reduction in their workforce. The Plan administrators then discontinued Clegg's benefits on the ground that Clegg's employment was "terminated," within the meaning of ¶ 4 of the Plan.

The union filed a grievance alleging that the company's discontinuance of Clegg's benefits violated the Agreement. Following the company's denial of the union's

claim, the union notified the company of its intent to pursue the grievance through arbitration. The company contended that the matter was not subject to arbitral review. The parties then agreed to submit the question of the arbitrability of the union's grievance to arbitration.

Following a hearing, the Board of Arbitration held that the underlying grievance was not arbitrable because the Agreement committed interpretation of the term "terminated" to the Plan administrators for "final" (non-reviewable) decision. The Board also relied on a prior arbitral decision dated November, 1975 ("the Fallon Award"), holding that determinations by the Plan administrators were totally dispositive of questions arising under the Plan. The Board noted that a new collective bargaining agreement entered into by the parties following the Fallon Award did not change the contract language regarding the finality of Plan administrators' decisions.

The union then commenced this action under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). Count I alleges in part that the Board of Arbitration's decision that the union's grievance was not arbitrable exceeded the Board's powers. The union seeks an order remanding the grievance to the Board for decision on the merits. Count II alleges that the company violated the Agreement by discontinuing Clegg's benefits. The union seeks direct judicial review of the Plan administrators' decision, and an order directing the company to pay Clegg benefits under the Plan.

On November 14, 1983, the parties filed a stipulation to dismiss with prejudice Count I of the complaint. Docket No. 21. On April 9, 1984, following oral argument, the union moved to withdraw the stipulation of partial dismissal and to reinstate Count I. Docket No. 21. The company has not objected, either at oral argument or by submissions filed with the court, to the reinstatement of Count I. Indeed, the company contends that this court retains jurisdiction to review the decision by the Board of Arbitration that the union's grievance is not arbitrable. Docket No. 25 at 2; see also Docket No. 20 at 22–25. In these circumstances, the union's motion to withdraw the stipulation of partial dismissal and to reinstate Count I will be allowed.

Resolution of this controversy depends upon the answers to the following questions:

(1) Was Clegg's employment "terminated"? This question may be further divided into two parts: (a) What constitutes a termination of employment within the meaning of ¶ 4 of the Plan? (b) Did the factual circumstances of Clegg's being laid off come within this definition of termination?

(2) Are both parts of question (1) among the questions that, in accordance with ¶ 8 of the Plan, are to be decided by the Medical Director and Vice President of the company as administrators of the Plan? If so, are both parts of question (1) also within the scope of the provision in ¶ 8 that the decision of the Plan administrators "with respect to all questions arising thereunder, including questions respecting the duration of total and partial incapacity to work, shall be final"?

(3) Is a difference over question (2) a "dispute arising between the parties during the term of this Agreement concerning the true interpretation and meaning of this Agreement," which, under Art. XXXII, is to be treated as a grievance subject to arbitration?

(4) What is the effect of the agreement between the parties, after the dispute had arisen, to submit to the Board of Arbitration the dispute over arbitrability—that is, question (3)?

(5) What, if any, jurisdiction does a United States district court have to decide, or to review a decision, by either the Plan administrators or the Board of Arbitration, answering any or all of questions (1)–(4)?

The relationship among these five questions is such that no one of them can be answered fully apart from the others. The choice, for any adjudicator, is among different sets of answers that respond to all five

questions in a way that is consistent with both the applicable federal law and the Agreement of the parties.

In part II, I proceed to address two aspects of question (5) that can be answered independently of the other questions. In parts III–IV, I turn to considerations bearing on determination of the set of answers to all five questions.

## II.

■ In the absence of an agreement for arbitration or some other form of final resolution of a dispute over an individual employee's rights arising under a collective bargaining agreement, a United States district court has subject matter jurisdiction over an action filed by the labor organization representing the employee for enforcement of the employee's rights as a third-party beneficiary of the collective bargaining agreement. 29 U.S.C. § 185(a); *see also, Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Thus, in the present case, this court has jurisdiction to answer question (1)—that is, to determine whether Clegg's employment was "terminated"—unless the parties had made an effective agreement for an alternative method of resolving this kind of dispute without resort to court.

■ No doubt, also, it is legally permissible for parties to a collective bargaining agreement to commit some identified types of disputes to resolution out of court—by arbitration, for example—while reserving their right of direct access to court for other types of disputes.

## III.

■ As a general rule, the arbitrator's jurisdiction to resolve a particular class of dispute is a matter to be determined by the court on the basis of the contract between the parties. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). However, parties may stipulate that the issue of arbitrability is to be decided by the arbitrator rather than the court. *See, e.g., Metal Products Workers*

*Union v. Torrington Co.*, 358 F.2d 103 (2d Cir.1966). The only limitation established by precedent is that the parties' intent to vest the arbitrator with power to decide arbitrability must be clearly demonstrated. *Id.; Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960) ("*Warrior & Gulf*").

■ In the instant case, the Agreement (the basic collective bargaining contract) does not explicitly provide for the resolution of arbitrability questions by the Board of Arbitration. Although questions of arbitrability necessarily concern "the true interpretation and meaning" of a collective bargaining contract, an arbitration clause such as the one contained in Articles XXXII and XXXIII of the Agreement is not the kind of clear demonstration of mutual intent that serves to authorize the arbitrator to determine arbitrability. *Warrior & Gulf, supra.*

Here, however, after the underlying dispute arose, the parties agreed to submit the issue of arbitrability (question (3), *supra*) to the Board of Arbitration. The parties framed the question to be decided by the Board as follows:

> Does the issue raised by P & M Grievance No. 2089 dated November 14, 1979 present an arbitral difference between the parties under the collective bargaining agreement?

Docket No. 27 at 3.

In part V, *infra*, I conclude, for reasons not advanced by either party to this case, that this agreement was not legally effective. First, however, I consider the contentions advanced by the parties.

The union contends that in agreeing to submit arbitrability to the Board of Arbitration it nonetheless reserved its right to independent judicial determination of the arbitrability issue. The union argues that although the court may consider the arbitrators' decision on arbitrability, it should not defer to that decision. Rather, the union contends, the court must make an independent determination of arbitrability. *See Mobil Oil v. Local 8–766, Oil, Chemi-*

*cal & Atomic Workers,* 600 F.2d 322, 325 (1st Cir.1979).

Contrary to the union's assertions, the only precedents for independent judicial determination of arbitrability involved cases in which the parties had not expressly committed arbitrability to the arbitrator for determination. For this reason I do not read *Mobil Oil, supra,* as addressing the issue that is presented here. In *Mobil Oil,* the parties submitted to arbitration a grievance concerning the employer's subcontracting practices. The parties disagreed whether the dispute was arbitrable, but did not submit the arbitrability issue to the arbitrator. The First Circuit held that, in these circumstances, the district court, in reviewing the arbitrator's award, must make its own independent determination of the threshold issue of arbitrability. *Id.* at 325. The court did not address the role of the district court in reviewing an arbitrator's determination of arbitrability where the parties had agreed, by contract or post-dispute stipulation, to submit the issue of arbitrability to arbitration.

Of course, the union could have asserted its right to independent judicial determination of arbitrability by seeking declaratory and injunctive relief before invoking the arbitration procedure. *See W.R. Grace and Co. v. Local Union 759,* 461 U.S. 757, 103 S.Ct. 2177, 2180, 76 L.Ed.2d 298 (1983) *("W.R. Grace").* But here the union chose a different course—it agreed to submit the issue of arbitrability to arbitration. The deferential standard of judicial review that applies to an arbitrator's award in a dispute arising out of a collective bargaining agreement has been applied where the parties have submitted a legal question, ordinarily within the court's jurisdiction, to the arbitrator for decision. *George Day Const. v. United Broth. of Carpenters,* 722 F.2d 1471, 1477 (9th Cir.1984); *see also Warrior & Gulf, supra,* 363 U.S. at 583 n. 7, 80 S.Ct. at 1353 n. 7.

Moreover, regardless of what may have been the terms of the Agreement—the collective bargaining contract between the parties at bar—the submission of the issue of arbitrability now under consideration is one that was made after the dispute had arisen. If effective in other respects (but see part V, *infra* ), this would be a clearer manifestation of mutual intent for arbitration of arbitrability than appeared in the earlier collective bargaining contract.

The union argues that, in submitting the issue of arbitrability to arbitration, both parties specifically reserved the right to independent judicial determination of arbitrability. The union points to certain statements made by counsel during the arbitration hearing. Docket No. 24 at 15. This argument is flawed by the lack of such a reservation in the stipulated statement of the issue to be arbitrated. *See* Docket No. 27 at 3.

However, like all arbitral decisions, a decision on a question of arbitrability expressly committed to the arbitrator for determination is judicially reviewable to determine if it "draws its essence from the collective bargaining agreement." *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) *("Enterprise Wheel").* I conclude that this rule applies not only when the agreement for arbitration of arbitrability was part of the collective bargaining contract but as well when it was made after the dispute over arbitrability had arisen. *George Day, supra* at 1475.

If an arbitrator's decision on an arbitrability question expressly committed to him or her for resolution manifests an infidelity to the agreement between the parties, the reviewing court cannot enforce the award. On the other hand, a court cannot overrule an arbitral decision merely because the court's interpretation of the contract differs from that of the arbitrator. *Enterprise Wheel, supra* at 599, 80 S.Ct. at 1362. I will now evaluate the Board of Arbitration's decision on arbitrability under this limited standard of review.

IV.

The Board of Arbitration interpreted ¶ 8 of the Plan as, first, vesting in the Plan

806

administrators the power to interpret the meaning of "terminated" as used in ¶ 4 and, second, making the Plan administrators' interpretation "final" in a sense that precluded arbitration of the dispute over the meaning of "terminated." Implicit is the further consequence that if this court does not vacate the arbitrator's decision of nonarbitrability then this court must either accept jurisdiction to hear *de novo* the dispute over meaning of "terminated," or else recognize the Plan administrators' decision as "final"—either in a sense permitting some form of deferential review or else in a sense precluding any review, even by the most deferential standard.

In considering whether an arbitral award that has these implications both as to the rights of the parties and as to the jurisdiction of the court "draws its essence from the collective bargaining agreement," I turn first to an examination of the fundamental character of the underlying dispute.

█ A dispute over the meaning of "terminated" as used in ¶ 4 of the Plan is a dispute over the standard to be applied not alone to Clegg's claim but as well to all other like claims. It is a dispute over contract interpretation. It is by nature very different from a dispute of fact about the circumstances in which Clegg was laid off. In common usage, a dispute of the latter type is a dispute of fact and the determination of the adjudicator is a fact finding. Resolution of a dispute of the former type requires the adjudicator to make a determination of the standard of judgment to be applied to the factual circumstances. The determination of that standard may depend on an issue of contract interpretation or an issue of applicable law that may override or set limits upon agreements of the parties, or both. To the extent that any issue of applicable law must be decided, the determination is a conclusion of law. Also, in common usage, the answer to an issue of contract interpretation is referred to as a conclusion of law if, under guiding principles, it is to be resolved and reviewed as matters of law are resolved and reviewed.

Opinions of higher courts on appeal from trial court decisions involving contract interpretation are not directly in point on the present questions regarding allocation of responsibility for contract interpretation among Plan administrators, the Board of Arbitration, and trial and appellate courts. Yet we may find in them instructive analogies.

In ordinary contract litigation outside the specialized field of labor law, issues of contract interpretation sometimes depend on resolving fact disputes presented by evidence as to what communications, oral and written, were exchanged between the parties and whether particular words or phrases used by them had a special meaning by reason of common usage in a trade or profession. Those disputes are resolved by fact findings. *See, e.g., Gillentine v. McKeand,* 426 F.2d 717, 721 (1st Cir.1970).

█ Absent such a fact dispute, a disputed question as to the meaning of the contract provisions is one as to which appellate courts do not defer to trial court determinations, as they would defer to fact findings not clearly erroneous. Rather, appellate courts consider such an issue of contract interpretation as they consider issues of law—fully examining the matter and making their own determination, unaffected by any presumption of correctness of the trial court interpretation. *See, e.g., Atlas Pallet, Inc. v. Bernard Gallagher,* 725 F.2d 131 at 134–135 (1st Cir.1984), and cases cited therein.

Mindful of these several ways the legal system deals with issues of contract interpretation, I turn to a more detailed consideration of factors bearing on questions (1), (2) and (3), concerning the interpretation of ¶¶ 4 and 8 of the Plan and Article XXXII of the Agreement.

Paragraph 8 commits "administration of the Plan" to the two company representatives and declares that their "decision with respect to all questions arising thereunder ... shall be final." Rather clearly the administrators are to resolve disputes of fact bearing upon an employee's claim for benefits under the Plan. But an issue as to

whether undisputed facts about the circumstances of being laid off constitute being "terminated," as that term is used in ¶ 4, is not an issue of fact. It is instead an issue of contract interpretation. Nor have the submissions of the parties in this case disclosed any evidence that would support a contention that other communications between the parties to the Agreement or a usage in the trade would be relevant to this issue of interpretation. In these circumstances, the words of ¶ 8 will not bear the construction that the dispute over meaning of "terminated" as used in ¶ 4 is among the questions that are to be decided by Plan administrators. This conclusion is supported both by a close parsing of the language of ¶ 8 and even more compellingly by the manifested intent of the contracting parties when this paragraph is read in the larger context of the collective bargaining agreement.

Parsing the language closely, one must consider the antecedent of "thereunder," in ¶ 8. It might be argued either that "thereunder" means "under the Plan" or that "thereunder" means "under the administration of the Plan." In either event, it somewhat strains the language to argue that questions as to what are the terms and conditions of the Plan are questions arising "thereunder." They are questions about the Plan itself, rather than about administration of it or under it. Thus, such limited aid to interpretation as one may find in the use of "arising thereunder" points toward the conclusion that the issue of interpretation of "terminated" in ¶ 4 is not a question that ¶ 8 refers to the Plan administrators for decision, either initial or "final."

In concluding that the decision of the Plan administrators concerning Clegg's status was "final," the Board of Arbitration relied in part on the Fallon Award. However, the Fallon Award dealt solely with a question "respecting the duration of ... partial incapacity for work"—a question the resolution of which ¶ 8 expressly and exclusively delegates to the Plan administrators. Of course, this court cannot disregard the Board's decision merely because the Board's reliance on the Fallon Award

and the related inferences it drew from the parties' subsequent failure to amend the language in ¶ 8 was misplaced. *See W.R. Grace, supra,* 461 U.S. at ——, 103 S.Ct. at 2183. Here, however, I conclude that although the Fallon Award itself may have drawn "its essence from the collective bargaining agreement," the Board's treatment of that award as a relevant precedent in this case did not.

Parsing language, one must also consider implications of the term "administration." Certainly the use of this term is entirely consistent with empowering the company representatives to determine facts and to apply the provisions of the Plan to them. To read "administration" as including resolving a dispute over what are the provisions of the Plan is, however, a very different matter. It seems more consonant with the language used in ¶ 8 to understand the parties as having assumed, when agreeing upon this paragraph, that the provisions of the Plan had been determined already by their agreement. This reading is reinforced by the provisions of Article XXXIII, stating that even the Board of Arbitration—a body with neutral representation in contrast with the company-only representation of Plan administrators—does not have power to "add to, subtract from, or modify any of the terms" of the Agreement.

Of course, even though the parties may think of their Agreement as complete, the text of an agreement is never adequate to answer all questions that may arise in the relationship it governs. *Warrior & Gulf, supra* at 579–81, 80 S.Ct. at 1351–52. The parties, in their provision for resolving disputes about contract interpretation through grievance and arbitration (Arts. XXXII and XXXIII), have plainly recognized their inevitable failure to anticipate and answer all questions.

Turning to the broader context of the relationship of the parties as an aid to understanding their Agreement, we find ample confirmation for the conclusion that the parties did not agree that Plan adminis-

trators should have the power to determine the meaning of "terminated" in ¶ 4.

It would be extraordinary, indeed, that a collective bargaining agreement would leave issues of on-going standards of dispute resolution to be resolved by representatives of one party, whether employer or union. In the instant case, the Plan administrators conferred with the company's bargaining representative in reaching their decision concerning Clegg's status. Although the occurrence of such consultation does not alone establish bad faith, the very fact that the Plan administrators recognized the interest of the bargaining representative in their decision reinforces the conclusion that this was not the kind of issue the parties contemplated committing to company-only representatives.

It is understandable that fact-specific decisions about disability of a particular employee would be left to the Medical Director and Vice President in charge of Employee Relations. Such decisions would not involve determination of standards or rules—matters far more likely to be of concern to the bargaining representatives of the employer and union. Also, it is understandable that employer and union representatives would wish not to be drawn into repetitive use of grievance and arbitration procedures for the resolution of individual benefit claims. Those considerations would not apply, however, to determination of standards or rules applicable to the whole body of benefit claims rather than to one claim distinctively.

For these reasons, I conclude that ¶ 8 will not bear the construction that the interpretation of "terminated" in ¶ 4 was committed to the Plan administrators for final determination.

■■■ I conclude that the dispute over the meaning of "terminated" is subject to arbitration in the first instance, and only such judicial review, if any, as may be appropriate in relation to arbitration awards generally under this agreement and applicable law. This conclusion is consistent with precedent as to the general perspective from which a court should consider arbitrability issues. "[T]he court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *Warrior & Gulf, supra* at 585, 80 S.Ct. at 1354. Moreover, since resolution of the underlying dispute necessarily entails consideration of other contractual provisions, such as the rights of laid-off employees, and the past practice of the parties in analogous situations, it is particularly well-suited for arbitration. The arbitration tribunal should determine what constitutes a termination of employment within the meaning of ¶ 4 of the Industrial Accident Disability Benefits Plan.

■■■ I conclude that the arbitration award in this case did not draw its essence from the Agreement and that the Board of Arbitration acted contrary to their authority as defined by the Agreement and applicable law in holding that the dispute over the meaning of "terminated" as used in ¶ 4 of the Plan was not arbitrable.

## V.

An alternative basis exists for vacating the arbitration award. As previously noted, the Agreement does not include a legally effective provision for the resolution of arbitrability questions by the Board of Arbitration. Nevertheless, after the dispute at issue here had arisen, the parties agreed to have the Board determine its jurisdiction over the union's grievance.

However, the post-dispute submission to arbitration of the issue of arbitrability was not dispositive of the questions raised by the union's grievance. The parties did not agree, nor did they authorize the Board of Arbitration to decide, who would resolve the question of contract interpretation underlying the union's grievance if the Board determined that the grievance was not arbitrable. The arbitrability issue cannot be decided apart from the issue whether the

disappointed claimant is entitled to judicial relief rather that having the Plan administrators' decision treated as "final" in some sense—either as subject to deferential judicial review or as precluding judicial review even under the most deferential standard.

For this reason, I conclude that the agreement to arbitrate the arbitrability issue was illusory. It purported to submit for arbitration only one aspect of an indivisible set of questions involving not only the arbitrator's jurisdiction but also the court's jurisdiction to review or decide *de novo* the questions regarding the meaning of "terminated." What appeared superficially to be a classic "meeting of the minds" on arbitrability was on closer scrutiny so incomplete that it was in legal effect no agreement at all. This point is underscored by the fact that both parties argue as their primary position in this court that the arbitrator's determination of nonarbitrability concluded that issue, but one party (the union) argues that it follows that this court must determine the meaning of "terminated" and the other (the employer) argues that it follows that the Plan administrators' determination of the meaning of "terminated" is final. The superficial agreement to submit the issue of arbitrability to the arbitrators merely swept under the rug more fundamental aspects of an indivisible set of questions. There was no manifestation of an agreement to arbitrate the set of indivisible questions, of which arbitrability was only one.

In these circumstances, for the reasons stated in Part II, *supra*, this court has jurisdiction to determine the arbitrability of the union's grievance. For the reasons stated in Part IV, *supra*, I conclude that the Board of Arbitration has jurisdiction to determine the meaning of "terminated" as used in ¶ 4 of the Plan.

### VI.

For the foregoing reasons, I conclude (a) that the dispute over the meaning of "terminated" is a dispute over contract interpretation that is subject to arbitration under Article XXXIII and (b) that questions (2), (3), (4), and (5) are to be answered as authorizing this court to make the determination stated in (a).

The case will be remanded for further arbitration proceedings consistent with this opinion.