# United States Court of Appeals

## For the First Circuit

No. 06-2405

LOCAL 791, UNITED FOOD & COMMERCIAL WORKERS UNION, AFL-CIO,

Plaintiff, Appellant,

v.

SHAW'S SUPERMARKETS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Howard, Circuit Judge,

Campbell, Senior Circuit Judge,

and Saris[*], District Judge.

Terrence E. Coles, with whom Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C. was on brief for appellant.
Robert P. Joy, with whom Robert P. Morris and Morgan, Brown & Joy were on brief for appellee.

November 7, 2007

[*]Of the District of Massachusetts, sitting by designation.

**CAMPBELL**, <u>Senior Circuit Judge</u>.  Plaintiff Local 791, United Food and Commercial Workers Union ("Local 791" or the "union") appeals from the entry of judgment on the pleadings in favor of defendant Shaw's Supermarkets, Inc. ("Shaw's") in the United States District Court for the District of Massachusetts. The district court found that because of the parties' agreement to resolve disputes internally, it did not have jurisdiction pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), to review the union's claim of breach of the collective bargaining agreement ("CBA") between the parties.[1]  We affirm the district court.

### Facts

Shaw's and Local 791 are parties to a CBA covering employees of supermarkets in southeastern Massachusetts and Rhode Island for the period of August 1, 2004-August 2, 2008.  The CBA is made up of 25 articles, along with a series of side letters and agreements.  The 1985 Side Agreements contain a provision that "[p]resent night stocking crew will not be forced to work evenings and lose the stocking premium" provided them as night employees.

---

[1]Section 301 provides, inter alia, that suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce may be brought in any district court of the United States having jurisdiction of the parties.  29 U.S.C. § 185(a).

The union brought the instant complaint in the district court alleging a breach of this provision, stating,

> On or about March 27, 2005, Shaw's forced approximately 75 bargaining unit employees doing night stocking work in stores covered by the 2004-2008 CBA to do stocking work in afternoon and evening hours that did not qualify for the 75 cents per hour premium. This has resulted in losses of earnings for full-time employees of at least thirty dollars per week, and lesser amounts for part time employees.
>
> Shaw's action in forcing the night stocking employees to do their work during afternoon and evening hours outside the hours for which the premium is paid violates [Article 4, Section 5, quoted supra] of the 1985 side agreements.

Following the filing of the union's complaint, Shaw's moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 12(b)(1). Shaw's argued that the dispute resolution procedures in the CBA constituted the exclusive remedy for grievances arising under the CBA, barring the union from seeking redress in the federal courts under Section 301 of the LMRA. See note 1, supra.

Article 13 of the CBA contains grievance and arbitration provisions preceded by the following declaration in Section 1:

> The Company and Union concur on the usefulness and mutual advantages of providing for the prompt and fair resolution of disagreements that could arise on the meaning and interpretation of this Agreement. The following procedures are intended to be the sole means for the resolution of grievances, which for the purposes of this Agreement are defined as disputes between the Management and the Union or covered Employee(s) concerning the meaning or application of this Agreement.

Article 13 then goes on to set out in four steps the referenced procedures said to be "intended to be the sole means for the resolution of grievances." The initial three steps, followed when needed by the fourth step of arbitration, are described as follows:

Step 1: An aggrieved Employee or the Union will bring his or her complaint to his or her Store Manager within seven (7) calendar days of the incident or action being complained of, or having reasonable knowledge thereof. The Store Manager will make a good faith effort to resolve the matter within seven (7) calendar days of being notified. If the Store Manager cannot resolve the matter, it will be reduced to writing by the Union and submitted to the Store Manager within five (5) calendar days of the receipt of the Manager's verbal response. The grievance must be signed by the grieving Employee(s) or the Union Representative, and must contain a statement describing the nature of the alleged contract violation and a good faith effort to identify the provision of the contract violation and dates, if known. The Manager will have five (5) calendar days to answer the grievance in writing. Employees may request their Steward to bring the matter to their supervisor's attention on their behalf. It is the intention of the parties to resolve as many grievances as possible at this step.

Step 2: If no resolution at Step 1, the matter may be submitted to the Regional management representative or his designee within seven (7) calendar days of receipt of the Store Manager's answer. A Step 2 hearing will be held within ten (10) calendar days from the management representative's receipt of the written grievance. A written response will be given to the Union representative within ten (10) calendar days of the Step 2 hearing.

Step 3: If not settled at Step 2, the matter may be further appealed in writing by the Union to the Company's Labor Relations representative, within ten (10) calendar days from the receipt of the Management's Step 2 response. A Step 3 hearing will be held within twenty-one (21) calendar days of the appeal and may be attended by appropriate representatives for the Union and Company. A written response will be given to the Union within fourteen (14) calendar days of the Step 3 hearing, or

within thirty (30) calendar days of the appeal if no hearing can be scheduled.  If no answer is given within these time limits, the Union may proceed to the next step.[2]

When the above three steps have been exhausted, "the matter may be appealed to arbitration . . . ," and the arbitration provisions are thereafter detailed separately under a heading of "Arbitration Procedures."

At the root of the present controversy is a paragraph introducing the relevant 1985 Side Agreements.  The paragraph states, "[t]he following 1985 and 1991 understandings are hereby continued but <u>shall not be subject to arbitration</u>" (emphasis supplied).  Both parties have agreed that this part of the CBA bars arbitration of the instant alleged violation of the 1985 Side Agreements, but they disagree about where that leaves them.  Shaw's argues that the elimination of arbitration under the 1985 Side Agreements simply means that plaintiffs are limited to, and still must use, the initial three steps of the grievance procedure and

---

[2]Section 2 of Article 13 provides that:

> The time limits specified in these grievance procedures are meant to be carefully observed by all parties.  Any grievance not handled or appealed within specified time limits at any step will be considered settled on the basis of the Management's last response.  Failure of the Management to respond within a specified time limit will allow the matter to advance to the next step.  Time limits may be extended only by the mutual written consent of the Company and Union.  Unless specifically stated in writing to the contrary, no grievance settlement will be considered to set any precedent or establish any binding practice.

abide by the results reached, with neither an arbitration remedy nor judicial action under Section 301 available. Local 791 contends that the elimination of an arbitration remedy with respect to alleged violations of the 1985 Side Agreements entitles them to go to the courts under Section 301 and obtain there a judicial determination of those grievances. Alternatively, the union argues that the provision against arbitration of the 1985 and 1991 understandings is ambiguous and the question of its meaning should be submitted to a fact-finder.

The district court granted judgment on the pleadings to Shaw's on the grounds that the applicable language in the CBA is unambiguous and requires the plaintiff to forego arbitration but to use the first three steps of the grievance procedure to contest the alleged violation. Accordingly, the court ruled, the court is without jurisdiction under Section 301 over the dispute.

## Discussion

We "review the district court's grant of the Fed. R. Civ. P. 12(c) motion de novo." International Paper Co. v. Town of Jay, 928 F.2d 480, 482 (1st Cir. 1991). "[T]he trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor. The motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle

him to relief." Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005) (citation omitted).

Judicial review under Section 301, see note 1, supra, is available to resolve disputes under collective bargaining agreements only "[i]n the absence of an agreement for arbitration or some other form of final resolution of dispute." Local 369, Utility Workers Union of America, AFL-CIO v. Boston Edison Co., 588 F. Supp. 800, 804 (D. Mass. 1985), aff'd 752 F.2d 1 (1st Cir. 1984). The Supreme Court has stated,

> [c]ollective bargaining agreements . . . generally contain provisions for the settlement of disputes through mutual discussion and arbitration . . . . Furthermore, Congress has specified . . . that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes."

Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976) (citing 29 U.S.C. § 173(d))). The foregoing congressional policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." Steelworkers v. American Mfg. Co., 363 U.S. 564, 566 (1960).

Here, the CBA sets forth a detailed three-step grievance process followed, if that proves unsatisfactory to the employee or union, by an arbitration remedy. The CBA makes plain that these "procedures are intended to be the sole means for the resolution of grievances." The paragraph immediately before the 1985 Side Agreements states that "the following 1985 and 1991 understandings

-7-

are hereby continued but <u>shall not be subject to arbitration</u>" (emphasis supplied).  The district court concluded that, "[t]he simplest interpretation of these words is that disputes over the provisions of the Side Agreements may be grieved [i.e., through steps 1-3], but may not proceed to the fourth and final step of arbitration."

The district court further believed that the character of the 1985 Side Agreements supported this interpretation.  The side agreements are less formalized than the main text of the CBA which they accompany.  They include nine provisions regarding the defendant's obligation to be "sensitive" to needs of its employees which, as the district court said, "are particularly ill-suited to arbitration."  The district court added "there is no explanation for why disputes under the Side Agreements would be entitled to judicial review, when disputes under the remainder of the CBA may <u>not</u> be appealed to a court" (emphasis in original).

Local 791 makes two arguments in response: first, that the plain language of the CBA requires judicial review, and second, alternatively, that the language of the CBA is at best ambiguous and thus a fact-finder must look to extrinsic evidence to determine the parties' intent in drafting the agreement.  We address each argument in turn.

i. Plain Language

In the district court's view, the "plain language" of the CBA indicated the parties' intention that the grievance which was the subject of the union's lawsuit should be resolved exclusively through the CBA's grievance procedures as set out in Steps 1-3, and not in the courtroom. While the CBA excluded from Step 4 arbitration grievances under the 1985 Side Agreements, it nowhere purported to exempt such grievances from utilizing the dispute resolution processes described in Steps 1-3. These three steps embody sophisticated mechanisms separate from arbitration, presenting a grievance in proceedings conducted before three successive levels of company management. They spell out oral and written procedures for identifying the particular complaint and the part of the CBA violated; call for hearings at Steps 2 and 3; provide strict time limits; and involve the presence of union representatives. The sentence ending Step 1 states: "It is the intention of the parties to resolve as many grievances as possible at this step."

Prior to outlining the above, the CBA states that the Company and Union "concur on the usefulness and mutual advantages of providing for the prompt and fair resolution of disagreements . . . on the meaning and interpretation" of the CBA, and goes on to say that the procedures following "are intended to be the sole means for the resolution of grievances . . ." (emphasis supplied).

We agree with the district court that the CBA does no more than remove the Step 4 arbitration option for the grievances in question. The parties' intent, as garnered from the CBA, is to utilize those internal processes, rather than court procedures, as the exclusive means for resolving grievances.

In saying this, we recognize that, most often, the case law enforcing dispute-resolution methods agreed to by the parties to a CBA as an alternative to lawsuits under Section 301 of the LMRA involves collective bargaining agreements with arbitration clauses that are operable in the particular instance. But the validity of such alternative procedures does not necessarily require arbitration in every circumstance to be the method available for resolving the particular grievance. The parties may agree to "desirable method[s] for settlement of grievance disputes." Hines, 424 U.S. at 562.[3] Here the parties have contracted to resolve their disagreements over interpretation of

---

[3]There are circumstances where, within the context of agreeing to resolve disputes internally through arbitration, a CBA may, by providing that a certain action will be non-arbitrable, provide effectively that the particular claim will be non-judicable in any forum, including the courts. See David E. Feller, A General Theory of the Collective Bargaining Agreement, 61 Cal. L. Rev. 663, 793 (1973) (CBA may provide for a probation period, during which an employee is not entitled to file a grievance protesting his discharge). Courts have found that where an underlying grievance is barred according to the parties' collective bargaining agreement, relief under Section 301 is unavailable. Truex v. Garrett Freightlines, Inc., 784 F.2d 1347, 1353 (9th Cir. 1985). See also Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 998 n.2 (9th Cir. 1987); Hollis v. Kaiser Foundation Hospitals, 727 F.2d 823, 825 (9th Cir. 1984).

the CBA by utilizing solely the "following procedures," which include the comprehensive machinery of Steps 1-3. While Step 4 ordinarily offers the option of arbitration should Steps 1-3 fail to satisfy the employee or the union, the parties' mutually-agreed exclusion of that final step in the case of certain grievances like the present one is valid and does not suggest an intention to scrap the internal grievance machinery altogether and go back to lawsuits as a method of resolving non-arbitrable industrial disputes. Rather the most obvious interpretation of removal of the arbitration option in these special and limited circumstances is that the parties, after bargaining, merely agreed to truncate the full panoply of dispute resolution procedures contained in the agreement for these types of matters. Had the parties wished to eliminate recourse to the grievance process altogether, they would have had to expressly eliminate, for the instant cases, not merely arbitration but the Steps 1-3 procedures themselves. This they did not do. Moreover, had the parties believed that by omitting arbitration here they were creating an exception to their declaration in Article 13, Section 1, that the "following procedures are intended to be the sole means for the resolution of grievances," one would have expected that exception to have been expressly noted in the CBA since it would be at variance with the

-11-

parties' statement of their intent to rely solely upon the specified internal procedures to resolve disputes.[4]

To support its argument that it is entitled to resolve its grievances under the 1985 Side Agreements by lawsuit, Local 791 relies upon language in Boston Edison, 588 F. Supp. 800 (D. Mass.), aff'd, 752 F.2d 1, supra. While that district court opinion is not germane on its facts nor binding on this court, we find no inconsistency between the court's general statements of the law and our position here. The district court said there that it had jurisdiction to hear the case "unless the parties had made an effective agreement for an alternative method of resolving this kind of dispute without resort to the courts." 588 F. Supp. at 804. Here, the parties can be said to have "made an effective agreement for an alternative method" to handle disagreements arising under the 1985 Side Agreements by leaving intact the first three steps of the grievance procedure and eliminating the arbitration option at the fourth stage. Nothing in the paragraph which eliminates arbitration of the 1985 Side Agreements purports also to remove the process spelled out in Article 13 of the CBA whereby a grievance goes first to the store manager, then to the

_____

[4]It is noteworthy that the language excluding arbitration in the case of the 1985 and 1991 Side Agreements is contained in the identical CBA that describes "the following procedures" as intended to be the sole means for the resolution of agreements.

-12-

regional management representative, and finally to the Shaw's Labor Relations representative.

The union stresses other language in Boston Edison to the effect that the courts have jurisdiction to resolve disputes "[i]n the absence of an agreement for arbitration or some other form of final resolution of a dispute." 588 F. Supp. at 804. We again see nothing inconsistent with our analysis here: the sophisticated 3-step grievance procedure is indeed "some other form of final resolution." We agree with the district court that the plain meaning of the CBA was to require resolution of this dispute under the remaining grievance process rather than by the present lawsuit. We are not persuaded by the union's contention that the plain meaning is to the contrary.

ii. Ambiguity

The union argues that the district court erred in finding the relevant language at issue unambiguous and should have instead concluded that the terms of the CBA require a fact-finder to look to extrinsic evidence, including bargaining history, to determine the parties' intent in excluding disputes over the 1985 Side Agreements from arbitration. Compare American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 940 F.2d 704, 707-08 (D.C. Cir. 1991) ("In the absence of ambiguity in the collective bargaining agreement, however, we have no cause to examine extrinsic evidence of the parties' intent"). As previously

-13-

discussed, however, we concur with the district court that under the plain language of the CBA, the 1985 Side Agreements--while non-arbitrable--remain subject to the first three steps of the grievance procedure, no contrary expression of intent being indicated.

Because we find the CBA unambiguous, we do not reach the union's discussion of the extrinsic evidence available. We have, however, reviewed the affidavit of Mary McClay, and the cited references concerning previous litigation of another provision of the CBA, and find that neither is persuasive as to an intention to leave to judicial resolution disputes such as the present one. Like the district court, we can find no reason why the parties to the CBA would provide exclusively that all disputes between management and the union or covered employees concerning the meaning or application of the CBA would go through the multi-stage procedures in Article 13 but would wish, having agreed to exclude the final step of arbitration for a small subset of these disputes, to allow the latter to invoke the more expensive, formal and time-consuming procedures of a federal court. The more reasonable interpretation is that found in the CBA's plain language, namely that provisions continued in the 1985 Side Agreements were to be left to the grievance procedures alone, without availability of the arbitration process in those instances.

-14-

## Conclusion

We **<u>affirm</u>** the district court's conclusion that the CBA's process for resolution of grievances arising under the 1985 Side Agreements precludes judicial determination.