**UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING ENERGY ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL–CIO, Plaintiffs**

v.

**U.S. TSUBAKI, INC., Defendant.**

**C.A. No. 07–30212–MAP.**

United States District Court,
D. Massachusetts.

Nov. 14, 2008.

Timothy F. Murphy, Jay M. Presser, Skoler, Abbott, & Presser, P.C., Springfield, MA, for Defendant.

Warren H. Pyle, Pyle, Rome & Lichten, & Ehrenberg, P.C., Boston, MA, for Plaintiffs.

***MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO CROSS–MOTIONS FOR SUMMARY JUDGMENT (Dkt. Nos. 12, 18 & 22)***

PONSOR, District Judge.

In this action, Plaintiff union has filed suit seeking to compel Defendant employ-

er to arbitrate a grievance related to the discharge of an employee, allegedly without "just cause." The employer has argued in response that the discharged employee was still within his probationary period and that any grievance regarding his termination was therefore barred by a provision of the applicable collective bargaining agreement ("CBA"). The parties' cross-motions for summary judgment were referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation, who recommended that the union's motion to compel arbitration be allowed.

Defendant employer has now filed objections to the Report and Recommendation. Upon *de novo* review, the court will adopt the Report and Recommendation. Plaintiff's Motion for Summary Judgment will be allowed, and judgment will enter accordingly.

■ Given the scrupulousness of the Report and Recommendation, a lengthy discussion is not necessary. As Judge Neiman found, the issue before the court is whether the particular employee fit within the definition of "probationary employee" as set forth in the CBA. Article Thirty–One clearly provides that disputes about the interpretation and/or application of the terms of the CBA are to be resolved in arbitration. The union's motion to compel arbitration seeks to have this interpretation made by the arbitrator. The authorities offered by Defendant, particularly *Shank/Balfour Beatty v. International Brotherhood of Electrical Workers Local 99*, 497 F.3d 83 (1st Cir.2007), are not apposite, since the First Circuit in *Balfour* made a determination that the specific disputed issue was excluded from the arbitration requirement. The interpretation called for by the union here falls squarely within the terms of the CBA.

Based on the foregoing, Judge Neiman's Report and Recommendation (Dkt. No. 22) is hereby ADOPTED. Plaintiff's Motion for Summary Judgment (Dkt. No. 12) is hereby ALLOWED and Defendant's Motion for Summary Judgment (Dkt. No. 18) is hereby DENIED. The clerk will enter judgment for Plaintiff. This case may now be closed.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO CROSS MOTIONS FOR SUMMARY JUDGMENT (Document Nos. 12 and 18)*

NEIMAN, Chief Magistrate Judge.

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy Allied Industrial and Service Workers Union, AFL–CIO ("Plaintiff") brings this action to compel U.S. Tsubaki, Inc. ("Defendant") to arbitrate a dispute arising under the terms of the parties' collective bargaining agreement ("CBA"). The parties' cross motions for summary judgment have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Plaintiff's motion be allowed and Defendant's motion be denied.

I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the nonmoving party. *Benoit v. Tech. Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir.2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For this purpose, an issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the nonmoving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). The nonmoving party bears the

burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The mere fact that both parties move for summary judgment does not change the foregoing analysis. *United Paperworkers Int'l Union, Local 14 v. Int'l Paper Co.*, 64 F.3d 28, 32 n. 2 (1st Cir.1995).

## II. BACKGROUND

The contested issue concerns whether the probationary status of terminated employee Dennis Palmer ("Palmer") is arbitrable. The resolution of that issue requires only a minimal recitation of the underlying facts because the case hinges primarily on the interpretation of the parties' CBA.

The following facts are uncontested. Palmer, whose first day of work was January 3, 2007, was discharged by Defendant when he reported to work on May 2, 2007. (Pl. Statement of Undisputed Facts ("Pl. Facts") ¶ 4; Def. Resp. to Pl. Statement of Undisputed Facts ("Def. Facts") ¶ 4.) Plaintiff, Palmer's union, submitted a grievance contending that the discharge violated the CBA because it was not for "just cause." (Pl. Facts ¶ 5; Def. Facts ¶ 5.) Defendant denied that the matter was subject to the grievance procedure because Palmer was a probationary employee who had not yet worked for ninety workdays.

(Def. Facts ¶¶ 9–10.) Plaintiff, for its part, contended that Palmer had indeed worked for ninety workdays and submitted the grievance to arbitration. (Pl. Facts ¶¶ 6–7.) Because Defendant did not recognize the grievance as legitimate, it refused to proceed with arbitration, and Plaintiff filed the instant complaint. (Def. Facts ¶ 9.)

For present purposes, the CBA contains three relevant provisions. Article Six, Section 1, provides that "[t]he normal workday shall be eight (8) consecutive hours of work within a twenty-four (24) hour period." Article Seven indicates that there is a ninety "working day probationary period for all new employees" and that Defendant has the "sole discretion" to dismiss an employee during his initial ninety-day probationary period.[1] In turn, Article Thirty–One provides that the grievance and arbitration procedure kicks in only for non-probationary employees.[2] In light of these provisions, the parties agree that, if Palmer worked fewer than ninety days, his dismissal is not subject to the grievance (or arbitration) procedure.

Both parties have submitted evidence pertaining to the calculation issue, *i.e.*, the exact number of days Palmer worked between January 3 and May 2, 2007. Because, as indicated below, the court will not attempt to resolve this calculation issue, further recitation of these countervailing facts is unnecessary. Nevertheless, the court notes that the number of days Palmer is believed to have worked ranges

---

1. In pertinent part, Article Seven, Section 2, entitled "Seniority ... Probationary Period," provides as follows: "There is a ninety (90) working day probationary period for all new employees.... The Company has sole discretion to dismiss a probationary employee and such dismissal shall not be subject to the grievance procedure." (Pl. Facts, Exhibit.)

2. In pertinent part, Article Thirty–One, entitled "Complaint, Grievance, and Arbitration Procedure," provides as follows: "It is the

intent of the parties that complaints and grievances should be settled as close to the source of the problem as possible. A grievance is defined as a difference of opinion or dispute between the Company and the Union or between the Company and any of its employees involving the interpretation and/or application of any terms of this Agreement.... If a grievance is not resolved at Step 3 or Mediation, the Union will have (30) days ... to appeal the question to arbitration." (Pl. Facts, Exhibit.)

from eighty-one (Defendant's position) to ninety (Plaintiff's position). (See Pl. Facts ¶ 7; Def. Facts ¶ 10.)

### III. DISCUSSION

The parties' basic positions are relatively straightforward. Essentially, Plaintiff seeks to compel arbitration (pursuant to Article Thirty–One of the CBA) to at least determine Palmer's probationary status. Defendant, in contrast, asserts (pursuant to Article Seven of the CBA) that Palmer's probationary status must first be determined by the court, not an arbitrator, because a probationary employee's dismissal is not subject to arbitration. For the reasons which follow, the court finds Plaintiff to have the better argument.

■ Underlying the resolution of this dispute is the well-established presumption of arbitrability. *See AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Put simply, "[d]oubts should be resolved in favor of [arbitration]" and an order to arbitrate a particular grievance "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted disputes." *Id. Accord Local 285, Serv. Employees Int'l Union v. Nonotuck Res. Assoc.,* 64 F.3d 735, 738 (1st Cir.1995). Defendant argues, however, that the presumption has two limits which apply here. First, Defendant asserts that, generally, a court and not an arbitrator must determine whether a dispute is subject to arbitration. Second, Defendant notes that the CBA itself contains an express provision (Article Seven) excluding the question of Palmer's status from arbitration. Neither of these arguments convinces the court that arbitration is inappropriate here.

■ As to Defendant's first assertion, the Supreme Court has indeed held that a court and not an arbitrator must generally determine whether the parties intended for a particular dispute be subject to arbitration. *See AT & T,* 475 U.S. at 651, 106 S.Ct. 1415. The issue before this court, however, is not whether the parties intended that this type of dispute be subject to arbitration, but whether Palmer fits the agreed-upon definition of "probationary employee," which, in turn, would determine whether he could grieve his termination. The issue, therefore, is quite simple: how many workdays, as defined by Article Six of the CBA, did Palmer work? In the court's view, this is a determination best assigned to the arbitrator who carries "the greater institutional competence . . . in interpreting collective-bargaining agreements." *Id.* at 650, 106 S.Ct. 1415.

■ As for Defendant's second assertion—that Article Seven expressly excludes probationary employee dismissals from the grievance procedure—the Supreme Court, as Defendant notes, has held that an express provision excluding a particular grievance from arbitration is sufficient to rebut the presumption of arbitrability. *See AT & T,* 475 U.S. at 650, 106 S.Ct. 1415; *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). And, here, Article Seven does state that "[t]he Company has sole discretion to dismiss a probationary employee and such dismissal shall not be subject to the grievance procedure." Yet, again, this exclusion requires an initial determination that an employee is a "probationary employee." In other words, until this threshold issue is resolved, Article Seven cannot yet, if ever, exclude Palmer from the grievance process.

■ In this regard, it appears that Article Thirty–One actually requires that Palmer's status be subject to the grievance procedure. In relevant part, Article Thirty–One requires that a "difference of opinion or dispute . . . involving the interpreta-

tion and/or application of any terms of this Agreement" is to "be settled as close to the source of the problem as possible." The dispute as to Palmer's status—and whether his days worked meet the definition of "workday" as described in Article Six—falls within the purview of Article Thirty–One. Plaintiff suggests, for example, that the dispute entails whether weekends can be workdays, whether a holiday on which an employee was able to work but could not because the company was closed is a workday, and whether a day on which an employee leaves early because he is ill constitutes a workday. (Pl. Facts ¶¶ 11–14.) Defendant, in contrast, asserts that even counting all the days Plaintiff requests—including "a day that Mr. Palmer had worked 4.53 hours before leaving with an unexcused absence"—Palmer would have worked less than ninety days when terminated. (Def. Memo in Opp. to Pl. Mot. for Summ. J. & in Supp. of its Cross–Mot. for Summ. J. ("Def. Brief") at 3–4.) This is they very type of dispute best resolved by an arbitrator. *See AT & T,* 475 U.S. at 649–50, 106 S.Ct. 1415 ("[E]ven if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.")[3]

██ Before concluding, the court makes two additional points. First, Defendant argues that Plaintiff's demand for arbitration raises an issue of *substantive* arbitrability and, via that doctrine, is properly before this court. *See Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., Inc., Balfour Beatty*

*Construction, Inc. v. Int'l Bhd. of Elec. Workers Local 99,* 497 F.3d 83, 89 (1st Cir.2007) ("A dispute over whether an arbitration provision applies to a particular controversy raises an issue of substantive arbitrability that is presumptively for the courts, not the arbitrator, to decide."); *Local 285, Serv. Employees Int'l Union,* 64 F.3d at 739 (explaining that a determination about whether a grievance included a particular claim was a matter of "substantive arbitrability"). Conversely, Plaintiff describes the issue as one of procedural arbitrability. *See Local 285, Serv. Employees Int'l Union,* 64 F.3d at 739 ("Procedural arbitrability . . . concerns such issues as . . . 'whether grievance procedures or some part of them apply to a particular dispute [or] whether such procedures have been followed or excused.'") (quoting *John Wiley & Sons v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)). *See also Schooltime Transp., Inc. v. United Food & Commercial Workers Union, Local 1459,* Civil Action No. 96–10261–FHF (D.Mass.1996) (holding that the determination regarding whether bus drivers should be subject to a probationary period "is properly left to the arbitrator").

Given that the underlying issue is inherently part of the process of settling his status as a probationary employee, the court believes that the instant dispute is more akin to a procedural issue which should be decided by an arbitrator. Yet even were the court to determine that the issue of Palmer's probationary status was one of substantive arbitrability, it would find that such substance—namely, how to count workdays—falls within the arbitra-

---

**3.** It is also well established that "[j]udicial review . . . is available to resolve disputes under collective bargaining agreements" only when the agreement includes no provision for dispute resolution. *Local 791, United Food & Commercial Workers Union v. Shaw's Super-*

*markets,* 507 F.3d 43, 46 (1st Cir.2007). Here, as described, Article Thirty–One provides a mechanism for resolving disputes: "If a grievance is not resolved at Step 3 or Mediation, the Union will have (30) days . . . to appeal the question to arbitration."

tion provision. *See Local 285, Serv. Employees Int'l Union*, 64 F.3d at 739 (citing *John Wiley & Sons*, 376 U.S. at 557, 84 S.Ct. 909) (in turn, noting that a court's judgment that the subject matter is arbitrable sends the case back to the arbitrator).

Second, the court notes that Defendant has raised a concern about the "slippery slope" of arbitration, *i.e.*, that a denial of its motion will encourage a future employee to seek arbitration regarding his discharge *"merely by claiming that he was not a probationary employee!"* (Def. Brief at 13 (emphasis and exclamation point in the original).) The court, however, is not persuaded that Plaintiff is interested in pursuing frivolous claims for discharged employees who are clearly within their probationary periods. That said, the court is also not implying that Defendant acted in bad faith; it is clear that Defendant discharged Palmer under a reasonable belief that he was a probationary employee. For all the reasons stated, however, the court believes that the underlying dispute needs to be submitted to arbitration.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiff's motion for summary judgment be ALLOWED, and that Defendant's cross motion for summary judgment be DENIED.[4]

DATED: September 18, 2008.

**4.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.